UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| M. JANE MINOR, | ) | |
| Plaintiff, | ) | Case No. 02-3354 |
| v. | ) | Judge Mills |
| CENTOCOR, INC., | ) | Magistrate Judge Evans |
| Defendant. | ) | |
| M. JANE MINOR, | ) | |
| Plaintiff, | ) | Case No. 04-3114 |
| v. | ) | Judge Mills |
| CENTOCOR, INC., | ) | Magistrate Judge Evans |
| Defendant. | ) | |

## AFFIDAVIT OF PAUL WILLIAMS

I, Paul Williams, being duly sworn on oath, deposes and states, based on my personal knowledge, the following:

1. I have been employed at Centocor since January of 1998.

2. I am presently employed at Centocor as a Director of Medical Education. During the years 2000 and 2001, I held the position of Director of Sales Compensation.

3. My responsibilities included managing and developing the Sales Incentive Compensation Plan ("SICP") based on sales for Retavase.

4. During the year 2001, the VS were eligible to receive a payment, in addition to their salary, pursuant to Centocor's SICP.

5. The following information about the SICP is based on my personal experience in formulating the SICP for the year 2001 and reviewing Centocor's records related to the SICP.

6. The SICP payments reflected in the Incentive Compensation Reports attached to Centocor's Motion for Summary Judgment are for the product Retavase only. The Incentive Plan for the Cordis product, Hydrolyser, was a completely different calculation.

7. The SICP payment was paid every quarter.

8. The formula for calculating the SICP included various metrics for volume sales and sales growth in the VS's territory. The metrics for volume and growth were given different weights.

9. Centocor modified the formula and how each metric was weighted from time to time.

10. Centocor calculated the SICP for each VS in the same way, using the same formula and metrics. The SICP formula applied to each and every VS in the nation in the same way.

11. During the year 2001, each of the metrics for growth and volume were ranked nationally 1-23, as there were 23 VS in the nation. The rank for each metric was called a "Product Performance Index," or "PPI."

12. The PPI was then added for each quarter and the sum of the PPI was called the VS's "Total Product Performance Index."

13. The VS's Total Product Performance Index was also ranked nationally.

14. For instance, Minor's Incentive Compensation Report for March 2001 shows the calculation for her SICP payment for the first quarter of 2001 (Q1, 2001). See Exhibit A.

15. Minor's total volume sales for Q1, 2001 was 108 units of Retavase.[1]

16. Minor's volume sales were compared to the other 22 VS and she was ranked nationally 11 out of 23 for volume sales.

17. The rank for volume sales was weighted 50%. Her volume rank multiplied by fifty percent equals 5.50. Thus, her PPI for volume was 5.50.

18. The next metric, "Volume Change," measured the difference between the volume of units sold and the VS's baseline for that quarter. The difference in units sold for Minor was a negative 13.5. She was ranked nationally 13 out of 23 for this metric. This metric was weighted at 30%. Minor's PPI for Volume Change was 3.90.

19. The third metric, "Volume Growth," measured growth in sales in a VS's territory. It is calculated as a percentage of how many units were sold in relation to the baseline. Since Minor sold 108 units in Q1, 2001, this was 88.9% of her baseline. She was ranked nationally 13 out of 23 for Volume Growth. This metric was weighted 20%. Her PPI for "Volume Growth" was 2.60.

20. The PPI for each of the three metrics were added together to give a Total Product Performance.

21. In Minor's case, her 3 PPI's totaled 12.00 (5.50 + 3.90 + 2.60).

22. Minor's Total Produce Performance was nationally ranked 11 out of 23.

23. How high a VS was ranked determined the SICP payout the VS received.

---

[1] She missed her baseline for units sold in Q1, 2001, which was 121.5 units. The baseline is calculated by myself and a few other executives in upper management of Centocor and is based on the past purchase history of the accounts in a VS's account list. Team leaders have no role in calculating baselines. Baselines are the company's expectations for the number of units that should be sold in a particular VS's territory in a particular quarter.

24. I and a few other executives in upper management of Centocor predetermined the payment earned for each rank. The money paid was not tied directly to the sales for Retavase but was determined by Centocor's budget.[2]

25. Team leaders such as Antonio Siciliano had no role in determining these payments.

26. A VS ranked 22nd or 23rd was not eligible for an SICP payment. See, e.g., Exhibit B (Incentive Compensation Report for Caroline Kopecky, dated March 2001).

27. The eleventh ranked VS was paid $6,250 in Q1, 2001. A Corporate Multiplier of 10% was applied to this payment for all VS. Therefore, Minor's Q1, 2001 SICP payout totaled $6,875.

28. During the year 2001, it was decided by Centocor upper management to modify how the metrics were weighted for the third and fourth quarters of the year 2001 and to add two additional metrics based on marketshare. The two new metrics compared the volume sales of Centocor's Retavase to the volume sales of the competitors' products in a VS's territory.

29. The modifications were applied to each of the VS's SICP calculation in the nation. The SICP was calculated the same for each VS in the third and fourth quarter of 2001.

30. Each of the four metrics were weighted equally at 25% each.

31. This had the effect of reducing the impact of volume sales on the SICP calculation and emphasized growth.

32. Centocor held a national sales meeting in Orlando, Florida at the end of June of 2001.

---

[2] For instance, for the twelfth rank the payment was predetermined to be $5,781 and for the rank of fifteen the payment was predetermined to be $4,375.

33. At this meeting, I announced the change in how the SICP would be calculated and described the changes.

34. The Incentive Compensation Report for Minor in the Q3, 2001 shows that Minor's volume of units sold did not increase significantly. She sold 108 units in Q1 & Q2, 2001 and 119 units in Q3, 2001.

35. The metric for Volume Change and Volume Growth were calculated in the same way as in Q1, 2001 but each were weighted only 25%.

36. For Volume Change, Minor was ranked 22nd in the nation and her PPI was 5.50.

37. For Volume Growth, Minor was ranked 22nd in the nation and her PPI was 5.50.

38. For Unit Share, Minor sold 119 units of Retavase and a total of 356 units of competitor's product were sold in her territory. Her national rank for Unit Share was 18th. Her PPI was 4.50.

39. For Share Change, Minor was ranked last in the nation, or 23rd, because there was little growth in her territory in comparison to the other VS in the nation. Her PPI was 5.75.

40. Minor's Total Product Performance for Q3, 2001 was 21.25 (5.50 + 5.50 + 4.50 + 5.75).

41. Minor's Total Product Performance was ranked 22nd nationally. Pursuant to Centocor policy, she was not eligible for an SICP payment in Q3, 2001.

42. Team leaders such as Antonio Siciliano had no authority or ability to change a VS's SICP payment for the Retavase product or Hydrolyser product.

43. Siciliano's SICP payments were dependent on the performance of the VS under him in that his SICP payment included a payment based on "team earnings."

FURTHER AFFIANT SAYETH NAUGHT.

_____ 2/25/05
Paul Williams

Subscribed and sworn to before
me this 25th day of Feb, 2005.

_____
Notary Public

"OFFICIAL SEAL"
MARY ANN ROJAS
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 02/14/2008

6