**E-FILED**
Friday, 15 April, 2005  04:34:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| M. JANE MINOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02-3354 |
| | ) | |
| v. | ) | Judge Mills |
| | ) | |
| CENTOCOR, INC., | ) | Magistrate Judge Evans |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| M. JANE MINOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-3114 |
| | ) | |
| v. | ) | Judge Mills |
| | ) | |
| CENTOCOR, INC., | ) | Magistrate Judge Evans |
| | ) | |
| Defendant. | ) | |

### DEFENDANT CENTOCOR, INC.'S REPLY IN SUPPORT
### OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, Centocor, Inc., by and through its attorneys, Linzey D.
Jones and John M. Broderick of the law firm Pugh, Jones, Johnson & Quandt, P.C., and
Christopher Biswell of the law firm Drake, Narup & Mead, P.C., and pursuant to Fed. R.
Civ. P. 56 and Local Rule 7.1(D)(3), hereby submits Defendant's Reply in Support of
Defendant's Motion for Summary Judgment.

## I.     PLAINTIFF FAILED TO COMPLY WITH THE LOCAL RULES.

### A.     Plaintiff's Response to Defendant's Statement of Undisputed Facts.

Plaintiff's Response to Defendant's Statement of Undisputed Facts fails to
comply with the Local Rules.  Plaintiff failed to individually list each fact in her
response.  This makes it unnecessarily burdensome to determine which facts she admits

and denies and whether she has sufficiently identified evidence to support her denials. "These rules are not arbitrary obstacles for unwary litigants but instead are designed to streamline the disposition of summary judgment motions." Perry v. Delaney, 74 F. Supp. 3d 824 (C.D. Ill., 1999).

In addition, plaintiff engaged in the confusing practice of admitting certain statement of facts and then qualifying the admissions with parentheticals. Plaintiff is required to either admit or deny the fact statement and all denials are supposed to be supported with evidence. Local Rule 7.1(D)(2); Bettis v. Dept. of Human Services of the State of Illinois, 70 F. Supp. 2d 865, 867 n.2 (C.D. Ill., 1999). Plaintiff cannot have it both ways.

Plaintiff engaged in additional confusing practices. Plaintiff admitted certain facts and then denied them. These include numbers 15, 53 and 59. Plaintiff also failed to respond to numerous statements of fact, including numbers 64, 125, 126, and 169.

Given these violations of Local Rule 7.1(D)(2), the Court should deem the entirety of Defendant's Statement of Undisputed Facts admitted.

**B.**      **Plaintiff's Additional Statement of Material Facts.**

Plaintiff's Additional Statement of Material Facts fails to comply with the Local Rules. Plaintiff lumps multiple facts into her single numbered paragraphs in her additional statement of facts. This violates Local Rule 7.1(D)(2)(b)(3). Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732 (C.D. Ill., 1997). Plaintiff's Additional Statement of Material Facts should be stricken.

Assuming the Court does not strike these portions of Plaintiff's response, Defendant will attempt to identify what facts are admitted and denied, and, respond appropriately to Plaintiff's Additional Statement of Material Facts.

**II.     DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS**

Defendant objects to Plaintiff's Statement of Additional facts to the extent they overlap with Defendant's Statement of Undisputed Material Facts and therefore are duplicative and not "additional."

Defendant admits contentions by Plaintiff only for purposes of its motion for summary judgment. Defendant will contest plaintiff's contentions before and at trial, should it become necessary. Market Street Assoc., Ltd. v. Frey, 941 F.2d 588, 590 (7th Cir. 1991)(filing a summary judgment motion does not waive right to contest facts at trial).

The PLAINTIFF'S Background in Pharmaceutical Sales.

1.     Prior to going to work for the COMPANY the PLAINTIFF had worked for over 25 years as a pharmaceutical sales representative [PLAINTIFF's Affidavit 2].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims.

2.     The PLAINTIFF had worked for over 18 years for Abbott Laboratories, Inc. where she sold Urokinase, a medication which dissolved blood clots for the treatment of peripheral vascular disease [PLAINTIFF's Affidavit 3].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims.

The PLAINTIFF's Initial Employment with the COMPANY.

3.     In September of 1999 the PLAINTIFF accepted a job offer with the COMPANY as a cardiovascular representative [PLAINTIFF's Affidavit 6].

RESPONSE:  Admitted.

4.    Initially, the PLAINTIFF worked for the COMPANY as a cardiovascular representative. In the early summer of 2000, she was asked by COMPANY officials to become a vascular specialist. She was told that if she accepted that position the size of her sales territory would temporarily increase until the end of the year 2000 when, as the result of an expansion of the vascular sales force, it would be divided in half [PLAINTIFF's Affidavit 7].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

5.    The PLAINTIFF worked as a vascular representative for the COMPANY from the early summer of 2000 until October of 2001. Her sales territory included most of the state of Missouri, the state of Illinois south of Interstate 80, a portion of the states of Indiana and Kentucky proximate to Evansville, Indiana and part of the state of Iowa to Des Moines [PLAINTIFF's Affidavit 8].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

6.    As a vascular specialist, the PLAINTIFF was responsible for selling both Cordis products which were used for the treatment of cardiovascular disease and Retavase. She called on physicians treating patients for peripheral vascular disease such as Interventional Cardiologists, Interventional Radiologists and Vascular Surgeons [PLAINTIFF's Affidavit 9].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

7.    While she worked as a vascular sales specialist, Retavase had not been indicated by the Food and Drug Administration ["FDA"] for use in treating peripheral vascular disease. Accordingly, she could not solicit the sale of Retavase for the treatment of peripheral vascular disease. She was expected to field inquiries from physicians with the hope that without any solicitation they would develop an interest in and request

information concerning Retavase and its use in treating peripheral vascular disease [PLAINTIFF's Affidavit 10-11].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

8.     In marketing retavase for peripheral vascular disease, the PLAINTIFF would make an initial contact at an account with its pharmacy, interventional radiologist, interventional cardiologist doing peripheral work or vascular surgeons. She would inform those individuals that she had formerly worked at Abbott Laboratories and sold urokinase. Hopefully, they would ask what she was selling presently. She would respond, among other things, by indicating that she had a product not indicated by the FDA for vascular disease. She indicated that if they would sign a request for information she could then provide them information concerning retavase [PLAINTIFF's Dep.II, pp.188-²l].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

9.     The PLAINTIFF would then follow up with the individual who had requested the information. Her pretense for contacting those individuals was to determine whether they had reconsidered the possibility of purchasing COMPANY product which had been indicated by the FDA. She would also ask if they had received medical information requested concerning retavase. In selling retavase, she would then ask if it would be possible to observe some of their cases. If they consented, she would spend time observing their cases [PLAINTIFF's Dep.II, pp.19-22].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this paragraph.

10.     The PLAINTIFF would attempt during the observation process to learn concerns which physicians had about the products of the COMPANY's competitors [PLAINTIFF's Dep.II, pp.23-24].

RESPONSE:  Admitted.

11.     The PLAINTIFF would also attempt to provide meetings or seminars to educate physicians in how- retavase could be used for treating peripheral vascular problems. Often this was connected with a social event. At these events physicians having experience in the use of retavase would speak [PLAINTIFF's Dep. II, pp.24-26].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

12.     In order to get retavase on a hospital formulary for use and treatment of peripheral vascular problems, the PLAINTIFF in addition to speaking with physicians would also speak with representatives of the hospital pharmacy [PLAINTIFF's Dep. II, pp.25-T7].

RESPONSE:  Admitted.

13.     Much of the PLAINTIFF's time in calling upon physicians and hospitals, therefore, was spent observing cases and speaking with pharmacists, physicians and support technicians to obtain a greater knowledge of how they were treating their patients. Through these efforts, they would hopefully make inquiry with her about how Retavase could be used to fill the void which occurred when Urokinase left the market [PLAINTIFF's Affidavit 14].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

14.     During the time period between the early summer of 2000 and January of 2001, the PLAINTIFF's supervisors as a vascular specialist were William Alexander and Tim Shaffer. While they were her supervisors, she enjoyed an excellent relationship with each of them and consistently received positive written performance evaluations, reviews and field progress reports [PLAINTIFF's Affidavit 15; PLAINTIFF's Dep. II, p.13].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

15.     When she was supervised by them, the PLAINTIFF advised both Mr. Alexander and Mr. Shaffer of the accounts which she felt were worthy of calling upon.

Generally, they accepted her recommendations about which accounts she should work in her sales territory. The PLAINTIFF had approximately 15 accounts while she worked under them. She was directed by them to focus on the top 3-5 accounts and pay secondary attention to the others [PLAINTIFF's Affidavit 16].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant denies this paragraph.   Plaintiff admitted Def.'s SMF ¶25, which sets forth the sixteen accounts she was initially assigned.  See also Exhibit "J."  Furthermore, Plaintiff admitted Def.'s SMF ¶30, which states that William Alexander did not agree with all of her proposed accounts. See also Dep. Trans. of Minor, Part I, at 181, lines 21-24 & at 182, lines 106, attached as Exhibit "C" to Def.'s Mot. for Summ. J.

16.    Between the early summer of 2000 and January of 2001 as a Vascular Specialist, the PLAINTIFF focused upon five or six accounts which were located in central Illinois and in the St. Louis area. She was never directed to call upon each of her assigned accounts in two-week cycles [PLAINTIFF's Affidavit 17].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant states that this paragraph is immaterial due to the fact plaintiff only takes issue with her treatment after she returned from sick leave in April of 2001.

17.    As a vascular specialist, the time the PLAINTIFF spent at each individual account varied directly with the level of business activity going on at that account [PLAINTIFF's Affidavit 18].

RESPONSE:   Admitted.

The COMPANY'S Vascular Sales Program.

18.    In 1999 Urokinase was removed from the market by Abbott Laboratories, Inc. [PLAINTIFF's Affidavit 4].

RESPONSE:   Admitted.

19.    Retavase had never been used for the treatment of peripheral vascular disease while Urokinase was on the market.  After Urokinase left the marketplace, there were only a few medications available for the treatment of peripheral vascular disease. Retavase had been used for that purpose even though its use was not indicated by the

FDA. Activase, a product of Genentech, Inc., was also used for the treatment of peripheral vascular disease [PLAINTIFF's Affidavit 12].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

20.  Even though it had not been indicated by the FDA, vascular sales specialists for the COMPANY were to sell Retavase to physicians and hospitals for use in the treatment of peripheral vascular disease. Their job was to develop a relationship with physicians and pharmacists so that they would request information to educate themselves on the use of Retavase for that purpose. Because Retavase was not indicated by the FDA, they could not make overt or direct efforts to sell Retavase for the treatment of peripheral vascular disease [PLAINTIFF's Affidavit 13].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant states that this statement is immaterial to plaintiff's claims because it is irrelevant.

21.  A vascular sales specialist was to use Cordis presentations as a point of entry that would gain unsolicited inquiries about Retavase from physicians and pharmacists for the treatment of peripheral vascular disease. It was important for a vascular specialist to develop a rapport with them. It took a great deal of time to become educated in their medical practice and the procedures that physicians were using to treat peripheral vascular disease [PLAINTIFF's Affidavit 14].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

22.  In 2001 Retavase was non-indicated for peripheral vascular disease. Vascular specialists, therefore, were restricted. They had to respond to unsolicited questions about the product. They could not bring unsolicited information to the doctors. If a physician asked a question a vascular specialist could have information concerning Retavase sent to the physician. However, they could not simply provide information about a new product. Physicians knew about Retavase. Once a physician asked a question about retavase, vascular specialists could respond [Van Cleave Dep.54-56].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

23.     "Formulary" is the term used when a product is approved by a pharmacy committee to place it in the hospital for physicians' use [Van Cleave Dep.61].

RESPONSE:  Admitted.

24.     Vascular specialists worked to have Retavase placed on the formulary of the hospitals to use in treating peripheral vascular disease [Van Cleave Dep.61].

RESPONSE:  Admitted.

25.     New stocking means that an account that never previously used a product had placed its first order [Brown Dep.5l-52].

RESPONSE:  Admitted.

26.     A vascular specialist sold Cordis products and Retavase [Siciliano Dep.14-15].

RESPONSE:  Admitted.

27.     "Indicated" means that the FDA has cleared a product for a particular use [Siciliano Dep.61].

RESPONSE:  Admitted.

28.     If a product is indicated then a sales rep for the COMPANY can discuss it within the guidelines of the indication. If a product is not indicated then only unsolicited requests can be answered or information be provided [Siciliano Dep.62].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

29.    Of all the cities the vascular specialists called on, Houston had one of the highest number of physicians treating for vascular problems [Siciliano Dep.l98, Ex.87].

RESPONSE:  Admitted.


30.    The goal of a vascular specialist was to increase the usage of Retavase in hospitals [Kopecky Dep.36].

RESPONSE:  Admitted.


31.    The rankings of vascular specialists fluctuated from quarter to quarter. Sometimes Caroline Kopecky was close to the top and sometimes close to the bottom. It was the same for the other vascular specialists [Kopecky Dep.42, Ex.47].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D)(2)(b)(3).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732 (C.D. Ill., 1997).  To the extent this paragraph implies that the rankings were arbitrarily calculated, Defendant denies this paragraph in that a detailed description of how the rankings of the vascular specialists were calculated is outlined in its statement of facts.  See Def.'s SMF ¶¶96-107; see also Exhibit "U" to Def.'s Mot. for Summ. J., Affidavit of Paul Williams.   Defendant further states that this paragraph is immaterial because it does not assert facts but is simply a characterization of how the vascular specialists were ranked.


The Siciliano Team.

32.    Antonio Siciliano was born on September 22, 1971. He graduated high school in 1989 [Siciliano Dep.6-l0].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that the Siciliano's age and where he graduated from high school are immaterial to Plaintiff's claims.


33.    Before joining the COMPANY, Tony Siciliano had one and a half years of experience marketing pharmaceuticals [Siciliano Dep. l1-12].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp.

732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that Siciliano's experience in marketing pharmaceuticals is immaterial to Plaintiff's claims.

34.  When he began in June 2000 with the COMPANY, Tony Siciliano was a vascular sales specialist. He held that position for six months until he was promoted to vascular sales team leader in late 2000 [Siciliano Dep.12-13, 22-23].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

35.  As team leader Tony Siciliano was responsible for five or six accounts and management of four vascular sales specialists [Siciliano Dep.28-29].

RESPONSE:  Admitted.

36.  The vascular sales specialists on Tony Siciliano's team were: the PLAINTIFF, vascular specialist for the St. Louis district, Randy Van Cleave, vascular specialist for the Denver district, Denise Bannister Hill, vascular specialist for the Dallas District, and Caroline Kopecky for the Houston District [Siciliano Dep.40-4l].

RESPONSE:  Admitted.

37.  Denise Bannister Hill had not worked for the COMPANY prior to the team being formed. She replaced Tony Siciliano [Siciliano Dep.42-43].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

38.  Tony Siciliano's vascular sales specialists team covered Texas, Louisiana, New Mexico, Oklahoma, Kansas, Colorado, Missouri, parts of Illinois, small parts of Indiana and Kentucky, Iowa and Nebraska. Each vascular sales specialists' territory was defined by an overlapping cardiovascular district [Siciliano Dep.51].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp.

732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

39.    Caroline Kopecky was born on June 16, 1970 (Kopecky Dep.3).

RESPONSE:  Admitted.

40.    Caroline Kopecky became a vascular specialist after Urokinase was taken off the market in December 1999. There were no vascular specialists marketing Retavase before Caroline Kopecky became one [Kopecky Dep.39].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant states that this paragraph is immaterial in that it is irrelevant to plaintiff's claims.

41.    Each time Caroline Kopecky called on a hospital in 2001 she would visit with the physicians and departments in the hospital pertinent to her product. Sometimes she had to wait for the physician to become available [Kopecky Dep.48]. Caroline Kopecky would watch procedures being performed by physicians that were relevant to her products. That was normal. She also visited the pharmacy. She could be at a hospital the full day. That was typical. She did not always have an appointment when she called on a hospital. She did not just go to a hospital, visit with a doctor for half an hour and leave [Kopecky Dep.49].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

42.    Caroline Kopecky, during the first quarter of 2001, was ranked 23rd in sales of vascular specialists [Kopecky Dep.41, Ex.47].

RESPONSE:  Admitted.

43.     Denise Bannister Hill was born on October 23, 1970 [Brown Dep.5]. In March of 2001 she was hired by the COMPANY [Brown Dep.9]. Prior to working for the COMPANY, Denise Bannister Hill did not sell products used to treat heart attack or vascular disorders [Brown Dep. II].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph and further states it is immaterial that Bannister-Hill "did not sell products used to treat heart attack or vascular disorders."

44.     When she first started with the COMPANY, Denise Bannister Hill had no prior experience selling vascular products. She had never marketed anything comparable to Retavase [Brown Dep.22].

RESPONSE:   Defendant admits this paragraph and further states it is immaterial that Bannister-Hill "never marketed anything comparable to Retavase."

45.     As a vascular specialist, Denise Bannister Hill called on hospitals in Dallas, Texas and in certain other locations in the state of Texas [Brown Dep.23-24]. Denise Bannister Hill was never assigned an account where she had to travel further than 2½ hours from her home [Brown Dep. 25]

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph and further states the location of Bannister-Hill's account is immaterial to plaintiff's claims because plaintiff hand-picked her accounts.

46.     Arlington, Texas was added to Denise Bannister Hill's account list while Austin and Wichita Falls were removed. Wichita Falls had not been a Retavase user for vascular purposes [Brown Dep.28-29]. She had expressed a desire not to call on the Wichita Falls and Austin accounts because of the travel [Brown Dep.29-30].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).   Without waiving said objection, Defendant denies this paragraph because it misstates Bannister-Hill's deposition testimony regarding her Austin accounts.  See Exhibit Exhibit "O" – Deposition Transcript of Bannister-Hill at 29-30. Defendant further states this paragraph is immaterial to plaintiff's claims.

The PLAINTIFF's Experiences with Siciliano Prior to Her Medical Leave.

47.    Tony Siciliano first met the PLAINTIFF at the sales training when he was hired. They were both vascular sales specialists. They had a disagreement in the training session on how to approach an assignment. He thought it should be done one way, and she thought it should be done another [Siciliano Dep.202-203].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that this paragraph is immaterial to plaintiff's claims since Siciliano was not Plaintiff's supervisor at the time of the events described.

48.    Beginning in January of 2001, the PLAINTIFF's sales territory included Springfield, Illinois, Peoria, Illinois, the St. Louis, Missouri area, Des Moines, Iowa, Evansville, Indiana and Owensboro, Kentucky [Defendant Ex.G].

RESPONSE:  Defendant denies this paragraph because it is incomplete.  The geographic boundaries of Plaintiff's territory included all of Central and Southern Illinois.  See Def.'s SMF ¶¶22, 23, admitted by Plaintiff; see also Dep. Trans. of Siciliano at 269, lines 1-24, attached as Exhibit "D" to Def.'s Motion for Summ. J., and, Exhibit "I" attached to Def.'s Motion for Summ. J.

49.    During the first quarter of 2001, the PLAINTIFF, based upon sales from the earlier quarter, was ranked eleventh nationally among all of the COMPANY's vascular specialists [Defendant Ex.S].

RESPONSE:  Admitted.

50.    Shortly after becoming her team leader, Mr. Siciliano met with the PLAINTIFF in Springfield, Illinois. During that meeting, Mr. Siciliano unexpectedly said to the PLAINTIFF, "I am 29 years old. How old is your son?" Prior to that statement, they had been talking only about business and had not discussed matters of a personal nature [PLAINTIFF's Affidavit 22; PLAINTIFF's Dep. II, pp.39-42].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). This paragraph is immaterial as Plaintiff has not argued it is direct evidence of discrimination.

51.     Tony Siciliano had conversations with the PLAINTIFF regarding the account assignments in late 2000 or early 2001 [Siciliano Dep.36].

RESPONSE:   Admitted.


52.     During those conversations the PLAINTIFF indicated she would like to have the Memorial Medical Center account in Springfield, Illinois and a hospital in Peoria [Siciliano Dep.36-37].

RESPONSE:   Admitted.


53.     At some time in January or early February of 2001 Mr. Siciliano informed the PLAINTIFF that she would no longer call upon either Memorial Medical Center in Springfield, Illinois or Proctor Hospital in Peoria, Illinois. For several reasons Memorial Medical Center had high potential for buying the COMPANY's products used for peripheral vascular disease. First, it had on its staff Dr. Kim Hodgson, a vascular surgeon who was a national leader in interventional techniques in treating peripheral vascular disease. The PLAINTIFF had been calling on Dr. Hodgson and he seemed interested and receptive to the possibility of utilizing Retavase [PLAINTIFF's Affidavit 22-23].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).   This paragraph is immaterial because it is speculative.


54.     Second, Prairie Cardiovascular Consultants, the largest cardiology group in Illinois, performed many interventional procedures at Memorial Medical Center and the PLAINTIFF had an established rapport with many of the physicians in that group. Third, the interventional radiologists on staff at Memorial Medical Center were interested in utilizing Retavase for peripheral vascular disease and the PLAINTIFF had already established a rapport with them. Finally, the Director of the Pharmacy at Memorial Medical Center was a personal friend of the PLAINTIFF's [PLAINTIFF's Affidavit 23; PLAINTIFF's Dep. II, pp.74, 95].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). This paragraph is immaterial because it is speculative.


55.     Tony Siciliano does not know why the PLAINTIFF was not given the Memorial account [Siciliano Dep.39-40].

RESPONSE:  Defendant denies this statement of fact because it mischaracterizes Siciliano's testimony as to how Minor's account list was determined:

"Q:    Why was Jane not given the Memorial account?
A    I don't recall the specifics.  Once again, it was a balancing act.  We were permitted to have a certain number of accounts.  I believe out of the 12 accounts that we went with, there was agreement with the majority of those accounts, there was disagreement with a few on both sides, on Jane's side and on Michelle's side.  And at the end of the day, it became compromise trying to make a determination as to what was both best for the overall business, at the same time trying to take into consideration some of Jane's positions on certain accounts."

See Siciliano Dep. at 39-40, attached as Exhibit "D" to Def.'s Mot. for Summ. J.

56.    Proctor Hospital for several reasons also was an excellent prospect. First, it had recently hired Dr. Schlagel, an interventional radiologist, who had worked with Dr. Flavio Castaneda, a well-known physician, and a proponent in the use of Retavase for peripheral vascular disease.  Second, all of the interventional radiologists in Peoria were joining a group called Central Illinois Radiological Associates which meant that the biggest proponents of Retavase would rotate through all three hospitals in Peoria. Finally, there was also a new interventional nephrologist at Proctor Hospital and it was slated to become a Nephrology Treatment Center for Peoria, Illinois [PLAINTIFF's Affidavit 24; PLAINTIFF's Dep. II, pp.95-97].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  This paragraph is immaterial because it is speculative.

57.    The PLAINTIFF informed Mr. Siciliano of her concerns in losing both Proctor Hospital and Memorial Medical Center. Mr. Siciliano ignored everything she told him [PLAINTIFF's Affidavit 25].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this statement.

58.    In removing both Memorial Medical Center and Proctor Hospital from the PLAINTIFF's territory and assigning her hospitals in Des Moines, it became significantly more difficult for the PLAINTIFF to cover her territory. Additionally, both Memorial and Proctor were good prospects for retavase [PLAINTIFF's Dep. II, pp.102-04].

RESPONSE: Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp.

16

732, 740 n. 4 (C.D. Ill., 1997). Defendant further states that the paragraph is immaterial because it is speculative.

59.    Tony Siciliano met with Randy Van Cleave and obtained his thoughts and views on what accounts he should be assigned [Siciliano Dep.121, Ex.38]. Tony Siciliano does not recall any accounts assigned to Randy Van Cleave which were objectionable to him [Siciliano Dep.121- 122].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

60.    Tony Siciliano does not recall any account that Caroline Kopecky wanted which was not assigned to her [Siciliano Dep.l29].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

61.    Caroline Kopecky does not recall informing her supervisors of any account she thought would not be good that she was still assigned. She does not recall any account that she informed management would be a good account which was taken from her (Kopecky Dep.16-17].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, defendant denies this paragraph. See Def.'s SMF ¶¶88, 89, admitted by Plaintiff; see also Dep. Trans. of Kopecky at 61-62, attached as Exhibit "M" to Def.'s Mot. for Summ. J.

62.    There were no accounts that Caroline Kopecky recommended she receive that were not given to her [Kopecky Dep.58].

RESPONSE:  Defendant denies this paragraph because it misstates Kopecky's testimony who testified that she was assigned accounts she did not want.  Dep. Trans. of Kopecky at 58, attached as Exhibit "M" to Def.'s Mot. for Summ. J.

63.    After he became her supervisor, Antonio Siciliano assigned the PLAINTIFF accounts in Des Moines, Iowa. Because the cardiovascular representative of

the COMPANY had lost retavase business in Des Moines, the PLAINTIFF felt it they would not be good accounts. Nonetheless, she was required to call upon them [PLAINTIFF's Dep. II, pp.13-16].

RESPONSE: Defendant denies this paragraph because the Iowa accounts were included in her initial account list prior to Siciliano becoming her manager, a fact admitted by plaintiff. See Def.'s SMF ¶25, admitted by Plaintiff; see also Affidavit of James Alexander, attached as Exhibit "J" to Def.'s Mot. for Summ. J. This initial account list was approved by William Alexander, who was her manager before Siciliano, a fact admitted by plaintiff. See Def.'s SMF ¶31, admitted by Plaintiff; see also Dep. Trans. of Minor, Part I, at 171, attached as Exhibit "C" to Def.'s Mot. for Summ. J.

64.    There was no period of time in the 1st quarter when Caroline Kopecky was unable to work. Nonetheless, she ranked near the last in sales of all the vascular sales specialists [Kopecky Dep.43, Ex.47].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this paragraph.

65.    Antonio Siciliano, throughout his dealings with the PLAINTIFF, tended not to listen and consider her input. When the PLAINTIFF first met him at a sales meeting before he was her supervisor, Mr. Siciliano and the PLAINTIFF were part of a project. Two males who are contemporaries of Mr. Siciliano were also on the project. During it, he tended to discuss and receive input from the two males, but not the PLAINTIFF [PLAINTIFF's Dep. II, pp.102-03]. The PLAINTIFF's Medical Leave.

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant further states this paragraph is immaterial because Siciliano was not her manager at the time.

66.    On February 7, 2001 the PLAINTIFF began a medical leave of absence. She was hospitalized on three separate occasions [PLAINTIFF's Affidavit 26; PLAINTIFF's Dep. II, p.39].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this paragraph.

67.    While the PLAINTIFF was on her medical leave, she would call some of her accounts to keep in touch with them. Mr. Siciliano and Michelle Johnson were supposed to cover her accounts while she was on medical leave [PLAINTIFF's Dep. II, p.56].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

68.    The PLAINTIFF's medical leave lasted until late April of 2001 when she returned to work [PLAINTIFF's Dep. II, pp.50-SI].

RESPONSE:   Admitted.

69.    In late April of 2001 the PLAINTIFF was released to return to work. Her physician recommended that she return to her work duties on a graduated basis by initially working half days and build up to a full day of work [PLAINTIFF's Affidavit 27; PLAINTIFF's Dep. II, pp.71-72].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further objects that the paragraph is immaterial because it  includes inadmissible hearsay.

70.    When the PLAINTIFF returned to work, she was easily exhausted. She informed Mr. Siciliano that she did not feel she had recovered completely [PLAINTIFF's Dep. II, pp.72-73].

RESPONSE:   Admitted.

The PLAINTIFF'S Return From Medical Leave.

71.    The Monday following her return to work, Mr. Siciliano came to Springfield to observe the PLAINTIFF. He spent approximately 1¾ days with her. During that visit, Mr. Siciliano identified five goals which he had for the PLAINTIFF and established a timeline for completing those goals. Shortly following his visit, he sent to

the PLAINTIFF an FCR which stated those goals in written form [PLAINTIFF's Affidavit 28; PLAINTIFF's Dep. II, pp.73-78].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objections, Defendant admits this paragraph.

72.    The PLAINTIFF was concerned about the time period Mr. Siciliano established for her to complete each of those goals. Given the fact that she had just returned to work from an extended medical leave of absence, she felt she needed more time and the time period he had set for each goal was inadequate given the nature of the tasks. She expressed her views in that respect to Mr. Siciliano. She told him that because of her health she did not believe that she was physically capable of completing each of those objectives within the time period he established. She pointed out to him why regardless of her health the time allotted for those objectives was too short. She explained that there had not been a COMPANY representative in Des Moines for some period of time in marketing Retavase for cardiovascular purposes and that one of the Des Moines hospitals had recently signed a contract to use Activase and thus, the objective he established for Des Moines was not feasible. She also told him that given the work schedules of both the speaker that would be utilized and the physicians in Evansville as well as the logistics of arranging a dinner that a June objective for a dinner was just not adequate. She requested more time. He refused [PLAINTIFF's Affidavit 29].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objections, Defendant admits this paragraph.

73.    During the same conversation, the PLAINTIFF told Mr. Siciliano that St. Louis University Hospital ["SLUH"] was without an interventional radiologist and its director of pharmacy was working on a temporary basis and thus would not commit to acquiring Retavase until his permanent replacement was in position. She indicated to Mr. Siciliano that while she would attempt to meet his objectives, the time period was not realistic and requested additional time [PLAINTIFF's Affidavit 30].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objections, Defendant admits this paragraph.

74.     Mr. Siciliano without offering any explanation summarily stated to the PLAINTIFF that they would proceed with the goals in the timeframe he had established [PLAINTIFF's Affidavit 31].

RESPONSE:  Admitted.


75.     With respect to the Evansville goal Mr. Siciliano had established for the PLAINTIFF, she arranged a dinner meeting within the time period he established. The night the event was scheduled, a very hard rainstorm occurred in Evansville. Consequently, a number of physicians who were scheduled to attend that event did not attend it. There were, however, two Interventional Radiologists and a clinical pharmacist who did attend. As a result of that event, the PLAINTIFF was able to secure Retavase business at St. Mary's Hospital in Evansville, Indiana [PLAINTIFF's Affidavit 38].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objections, Defendant admits this paragraph.


76.     With respect to the objective established for SLUH, the PLA1N1'IFF arranged for Dr. Castaneda to speak to a group of Nephrologists. Dr. Castaneda's plane was delayed because of bad weather in the St. Louis area. Consequently, most of the attendees ate lunch and returned to work before Dr. Castaneda arrived. However, Dr. Kevin Martin, the most influential Nephrologist at SLUH for purposes of possible Retavase use, did stay and met with Dr. Castaneda. As a result of that meeting, Dr. Martin developed an interest in possibly using Retavase in the treatment of peripheral vascular disease [PLAINTIFF's Affidavit 39].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, defendant admits the allegations of this paragraph.


77.     With respect to the Iowa objective established for the PLAINTIFF by Mr. Siciliano, she scheduled a dinner in Des Moines, Iowa for June of 2001. She arranged for Dr. Castaneda to be the speaker at the event and arranged a restaurant where the event would be held. She also secured confirmation from some attendees. During the early portion of the week when the event was scheduled, she received a call from Biyce Odson informing her that the radiology group at Methodist Hospital had disbanded and it would be pointless to have the dinner. The other hospital in Des Moines, Mercy Hospital, had

earlier entered into a contract with Activase and accordingly was not in the market for using Retavase for peripheral vascular disease [PLAINTIFF's Affidavit 40; PLAINTIFF Exs.78, 79].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant further objects because this paragraph includes inadmissible hearsay.

78.     With respect to Barnes Jewish Hospital, the PLAINTIFF made arrangements with Robyn Schaiff, its Director of Pharmacy prior to May 15, 2001, to provide her with information concerning the use of Retavase for peripheral vascular disease and catheter clearance. Because Retavase was not indicated for peripheral vascular disease, there was nothing further the PLAINTIFF could do until that information was provided by the medical affairs division of the COMPANY and reviewed by Ms. Schaiff [PLAINTIFF's Affidavit 41].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, defendant admits this paragraph.

79.     With respect to the objective established for the PLAINTIFF by Mr. Siciliano for St. Joseph Hospital, during the week of May 17, 2001 she traveled to that Hospital and met with Dr. Halverson, the head of the radiology department. Several days later, she again met with Dr. Halverson as well as the other Interventional Radiologists practicing at that Hospital. As a result of these meetings, she arranged for a trial usage of Retavase and Dr. Halverson signed a requisition for Retavase kits. Because of some concerns the pharmacy of that Hospital had with Retavase in the treatment of heart attacks, the requisition was later canceled. The events giving rise to the cancellation involved activities on the part of the COMPANY's cardiovascular representative calling upon the Hospital which did not involve the PLAINTIFF [PLAINTIFF's Affidavit 42].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, defendant admits this paragraph.

80.     Territory ranking reports show how the rep is ranked. In June of 2001 Denise Bannister Hill was ranked 14 at that point in the year for her sales of vascular products [Brown Dep.56, Ex. 18].

RESPONSE:   Objection.   Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, defendant states that the particular rank of Bannister-Hill in June of 2001 is immaterial to plaintiff's claims.

81.     During the year 2001, the COMPANY had 23 vascular specialists. During the first quarter of 2001 (based upon sales the preceding quarter), the PLAINTIFF led her team with a ranking of eleventh. Randy Van Cleave was twelfth and Caroline Kopecky was twenty-third. During the second quarter (which was based upon the first quarter sales which coincided with her medical leave), the PLAINTIFF was eighteenth, Randy Van Cleave was ninth and Caroline Kopecky was fifth [Defendant Ex.HH].

RESPONSE:   Objection.   Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, defendant admits the allegations of this paragraph.

82.     The PLAINTIFF's sales activities for retavase for the treatment of peripheral vascular disease during the second quarter of 2001 equaled or exceeded those of the other vascular specialists on her team [PLAINTIFF Ex.73; Siciliano Dep.76-79].

RESPONSE:   Defendant objects to this statement because it is vague, conclusory and not a statement of fact and defendant further states that it misrepresents the testimony of Siciliano.

The June, 2001 Sales Meeting.

83.     In June of 2001, the PLAINTIFF attended the COMPANY's National Sales Meeting. During that meeting, she had an opportunity to observe Mr. Siciliano interacting with Randy Van Cleave, Caroline Kopecky and Denise Bannister Hill. She noticed that Mr. Siciliano eagerly interacted with the other three members of the team concerning both business and non-business matters and tended to ignore her. This became so noticeable that the PLAINTIFF called Stephanie Moore, a human resource representative of the COMPANY during the meeting. The PLAINTIFF expressed to her a concern about how she was being treated by Mr. Siciliano as compared to what she observed of his interactions with other members of his team. At that time she wanted Ms. Moore's thoughts and ideas about what she might do to develop a more positive relationship with him [PLAINTIFF's Affidavit 36].

23

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this paragraph.

84.     Later during the conference, Mr. Siciliano had a breakout session with members of his team. At the outset of that session, he, looking directly at the PLAINTIFF, made the following statement: "First, I want to say that no one is being treated differently other than someone on the team is making more money than I am" [PLAINTIFF's Affidavit 37].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this paragraph.

85.     At the National Sales Meeting of the COMPANY the PLAINTIFF became concerned that Mr. Siciliano was not accurately communicating to her superiors information pertaining to her work activities. This arose when COMPANY officials voiced concern that the PLAINTIFF had not forwarded to Mr. Siciliano certain information. The PLAINTIFF in fact had provided that information to him. Following that incident, whenever she reported on important activities she sent a copy of her report to both Mr. Cramsey and Bob Russell, Mr. Siciliano's supervisor. In early July 2001 Mr. Siciliano informed the PLAINTIFF that she should not provide that type of information to them because they had both stated a preference that she not communicate with them. After that conversation, she contacted Mr. Cramsey who informed her that she was not burdening him and he would like to receive any significant sales activity related to her territory [PLAINTIFF's Affidavit 43-44].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant denies this paragraph. See Def.'s SMF ¶152, and Siciliano Transcript at 266, lines 9-24, attached as Exhibit "D" to Def.'s Mot. for Summ. J.

The Account Coverage Requirement Imposed upon the PLAINTIFF.

86.     Prior to working under the supervision of Antonio Siciliano, the PLAINTIFF's other supervisors with the COMPANY did not require her to cover her accounts in two-week intervals. Instead, they felt it was important that she figure who her most important accounts were and spend time with them. This is because it was time consuming to develop a rapport with physicians [PLAINTIFF's Dep. II, pp. 170-171].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that this paragraph is immaterial to her claims as it falls outside the relevant time period.

87.    In June, 2001 Mr. Siciliano asked the PLAINTIFF to provide him with a routing schedule showing how she would cover her accounts. In response to his request the PLAINTIFF submitted a routing schedule in which she would call on all of her accounts during a four week time span and on key accounts and those where there was currently some matter pending more frequently as the situation required. The routing schedule she submitted to him was consistent with the routing arrangement she had throughout her career in pharmaceutical sales with both the COMPANY and other employers [PLAINTIFF's Affidavit 47].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).      Defendant denies this paragraph on the basis that it is inconsistent with Plaintiff's deposition testimony.  See Dep. Trans. of Minor, Part II, at 179, attached as Exhibit "M" to Def.'s Mot. for Summ. J.

88.    Mr. Siciliano did not discuss with the PLAINTIFF the routing schedule she had prepared. Instead, on July 6, 2001 he sent her a routing schedule that required her to call on her St. Louis and Peoria accounts every week and her Des Moines, Evansville and Owensboro accounts every other week [PLAINTIFF's Affidavit 48].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).      Defendant denies this paragraph on the basis that it is inconsistent with Plaintiff's deposition testimony.  See Dep. Trans. of Minor, Part II, at 179, attached as Exhibit "M" to Def.'s Mot. for Summ. J.

89.    The routing schedule established by Mr. Siciliano was impossible to adhere to for multiple reasons. First, under his schedule the PLAINTIFF would only call upon pharmacies and the interventional radiology suite (commonly known as specials). In order to adequately call upon an account she also had to call upon the nephrology unit, cardiac cath lab, the dialysis lab, the operating room for vascular surgeons as well as meeting with various nurses and technicians. Second, if the PLAINTIFF was acquainting the staff concerning various applications of the product she would have to speak with the technicians and nurses on all three shifts. Third, in order for her to understand how Retavase might be used in a physician's practice she had to understand the nature of his practice. This required her to observe the physician in treating patients. Oftentimes when she called upon a physician she had to wait for the physician to complete treating

patients. This occupied considerable time. Fourth, Mr. Siciliano's routing schedule did not accurately take into consideration her travel requirements. From the PLAINTIFF's home in Springfield to her accounts in St. Louis required a two-hour drive each way. Travel to her accounts in Peoria required travel of approximately one and one half hours each way. Her driving time from her home in Springfield to Des Moines, Iowa approximated seven hours. Even traveling by air required several hours and was dependent upon airplane scheduling. The travel distance from her home in Springfield to Evansville, Indiana and thereafter to Owensboro, Kentucky involved eight hours of travel each way. The travel distance between St. Louis and Evansville by car involved five and one half to six hours. Because of all of these things it was not possible for her to call upon hospitals within the time period prescribed by Mr. Siciliano [PLAINTIFF's Affidavit 49].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).      Defendant further states that the paragraph is immaterial and does not state facts but conclusions and speculations.

90.     Upon receiving Mr. Siciliano's routing schedule the PLAINTIFF spoke with him about it during a telephone conversation. She attempted to explain to him why she felt the schedule was not only unrealistic, but would be overly burdensome upon her. He immediately responded by stating that was the routing schedule he expected her to follow [PLAINTIFF's Affidavit 50].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant denies this allegation because the email from Siciliano clearly states it was a "sample."  See Exhibit "EE" attached to Def.'s Mot. for Summ. J.

91.     The distance between the PLAINTIFF's home and her accounts in Peoria, Illinois is 70 miles. The distance between her home and her accounts in the St. Louis area approximates 100 miles. The distance from her home and her accounts in Des Moines, Iowa was 330 miles.  The distance between her home to her accounts in Evansville, Indiana was 404 miles. The distance from her home and her accounts in Owensboro, Kentucky was 445 miles [Defendant Ex.MM].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that this paragraph is immaterial because plaintiff was not required to drive to her accounts.  See Exhibit "EE" attached to Def.'s Mot. for Summ. J.

92.     Upon receiving an email from Mr. Siciliano containing a routing schedule for covering her accounts in a two-week interval, the PLAINTIFF spoke with Mike Ferlada, a product manager for retavase. Mike Ferlada indicated that the account coverage requirement was both impossible and ridiculous [PLAINTIFF's Dep. II, pp.164-167].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further objects that the paragraph includes inadmissible hearsay, lacks foundation, and is conclusory and does not state facts. Defendant further states the paragraph is immaterial because Mike Ferlada was not her manager.

93.     The PLAINTIFF's national ranking as a vascular specialist for the COMPANY in July of 2001 was 14 out of 23. Denise Bannister Hill was ranked 18 out of 23. Caroline Kopecky was ranked II out of 23. Randy Van Cleave was ranked 6 out of 23 [PLAINTIFF Ex.47].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

94.     Randy Van Cleave was not aware of any COMPANY policy requiring complete account rotation every two weeks [Van Cleave Dep.85, 87].

RESPONSE:   Defendant objects to the vagueness of the statement to the extent it speaks to Van Cleave's "awareness."  Without waiving said objection, Defendant denies this allegation because in the cited testimony Van Cleave acknowledges he was advised of the requirement in his FCR.  See Dep. Trans. of Van Cleave at 85, attached as Exhibit "F" to Def.'s Mot. for Summ. J.

95.     Randy Van Cleave does not recall any conversation with Antonio Siciliano in which Mr. Siciliano verbalized an expectation that he have completed account rotation every two weeks [Van Cleave Dep.85, Ex.37].

RESPONSE:   Admitted.

96.     Randy Van Cleave did not feel a set schedule would work given the geography of his area and the fact that business needs change daily. A customer might not be available on a set day. The schedule needed to be flexible to achieve coverage. Randy Van Cleave did not feel a set schedule was workable [Van Cleave Dep.77-78, Ex.l6].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

97.     After receiving her routing schedule from Antonio Siciliano, the PLAINTIFF inquired of Randy Van Cleave if he had submitted a two-week routing schedule and how he was able to set up a routing schedule accounting covering every account within two weeks. In response, Randy Van Cleave emailed the PLAINTIFF on July 7, 2001 indicating he had not been requested to submit a routing schedule of any kind and felt it would be unworkable to see all of his accounts every other week. According to him, he went to his high priority accounts at least once every other week with the lower priority accounts being considered maintenance [PLAINTIFF Ex.16; Van Cleave Dep.67-68, 77-781.

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

98.     Tony Siciliano did not prepare a routing schedule for any of the other vascular specialists. According to him, it was a coaching device for the PLAINTIFF [Siciliano Dep.141].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

99.    Tony Siciliano did not estimate how many hours in the day it would take to complete the  routing schedule he prepared. That was not his focus. The sales rep takes whatever time is necessary to complete the task [Siciliano Dep.146, Ex.6].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

100.    In preparing the routing schedule, Tony Siciliano did not ask the PLAINTIFF how often she felt she should meet with any of her accounts [Siciliano Dep.151].

RESPONSE:  Defendant denies this statement because it misstates Siciliano's deposition testimony, who stated he asked for a routing schedule from Plaintiff and did not recall if they discussed her opinions on how often she should cover her accounts. Dep. Trans. of Siciliano at 151, attached as Exhibit "D" to Def.'s Motion for Summ. J.

101.    Tony Siciliano's routing shows the PLAINTIFF spending a half-day each week at each of the four St. Louis area hospitals assigned the PLAINTIFF. She would be expected to perform her duties to sell Cordis products and provide information on Retavase [Siciliano Dep. 149-151, Ex.6].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

102.    When Tony Siciliano sent the PLAINTIFF her two-week coverage schedule she would have worked a little over two months since returning from medical leave [Siciliano Dep.161].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

103.    Vascular specialists generally manage their own territory. Antonio Siciliano was more detailed in managing the PLAINTIFF than other specialists. The account routing schedule was created only for the PLAINTIFF [Siciliano Dep.155-156].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

104.    Tony Siciliano indicated to the PLAINTIFF that she had to do complete account coverage every two weeks with improved follow up and follow through [Siciliano Dep.244, Ex.23].

RESPONSE:   Defendant admits this statement.

105.    On July 7, 2001 Randy Van Cleave emailed the PLAINTIFF and told her that he had never been requested nor did he feel that it would be workable to have a routing schedule in which he saw all of his accounts every other week. He indicated that he had three high priority accounts which he called on at least every other week and his lower accounts were considered maintenance accounts [PLAINTIFF Ex. 16; Van Cleave Dep.66-70].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further objects to this statement because it is vague as to what is "indicated" by Van Cleave's written email.  Defendant denies this paragraph because it is not supported by the exhibits cited and misrepresents the Van Cleave's deposition testimony as to how many accounts he covered every two weeks.

106.    In 2001 Randy Van Cleave called upon six hospitals in the region around Denver, Colorado. Two hospitals in the Lincoln-Omaha, Nebraska area, two hospitals in Springfield, Missouri and two hospitals in Tulsa, Oklahoma [PLAINTIFF Ex.38].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that this paragraph is immaterial as the location of Van Cleave's accounts has no bearing on plaintiff's claims as plaintiff hand-picked her accounts. See Def.'s SMF ¶¶24-32, all admitted by Plaintiff, and exhibits cited therein.

107.    At least every two weeks Caroline Kopecky would submit her expense reports to Tony Siciliano [Kopecky Dep.24-25].

RESPONSE:  Defendant states that how frequently Kopecky submitted her expense reports is immaterial to plaintiff's claims because it is irrelevant.

108.    Caroline Kopecky submitted expense reports to be reimbursed for travel expenses. She submitted those reports weekly. The reports documented each trip she took. There is no better record to identify where she went [Kopecky Dep.18-19].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that these allegations are immaterial to plaintiff's claims because they are irrelevant.

109.    Caroline Kopecky's expense reports would disclose where she travels. Those reports are the best means to tell where she went [Kopecky Dep.29-30].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that these allegations are immaterial to plaintiff's claims because they are irrelevant.

110.    Caroline Kopecky's accounts were in Houston, Corpus Christi, San Antonio, Galveston and New Orleans. Corpus Christi was a three-hour drive so Caroline Kopecky usually flew. It was a direct flight. She drove the hour to Galveston from Houston. Caroline Kopecky would drive the three hours to San Antonio. She would fly to New Orleans because it was a five-hour drive. There were multiple direct flights from Houston to New Orleans [Kopecky Dep.46-47].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that these allegations are immaterial to plaintiff's claims because they are irrelevant and Siciliano had no role in defining the geographic boundaries of her territory.

111.    With respect to Caroline Kopecky during the year 2001, most of her accounts were in Houston, Texas or its suburbs. With respect to those that were not in Houston, the distance of those accounts from Houston is as follows: Galveston, Texas - 47 miles; Corpus Christi, Texas -215 miles; Harlington, Texas -430 miles; New Orleans, Louisiana -351 miles; and San Antonio, Texas - 199 miles [Defendant Ex.MM].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that these allegations are immaterial to plaintiff's claims because they are irrelevant and Siciliano had no role in defining the geographic boundaries of her territory.

112.     From February through September of 2001, 70% of the account calls made by Caroline Kopecky were in the Houston, Texas area. During that time period, she called on her account in Harlington on three occasions, Beaumont on two occasions, Pasadena on two occasions and Corpus Christi and New Orleans on eight occasions. At no time during that time frame did she cover all of her accounts every two weeks [Kopecky Ex. 1-8].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that these statements are immaterial because Siciliano had nothing to do with defining the geographic boundaries of plaintiff's territory or that of the  other team members.

113.     Denise Bannister Hill submitted her expense reports to Tony Siciliano for approval [Brown Dep.35-36].

RESPONSE:  Defendant states that how frequently Kopecky submitted her expense reports is immaterial to plaintiff's claims because it is irrelevant.

114.     Denise Bannister Hill was not told when she started as a vascular specialist how frequently she had to see each account. She does not remember ever receiving a requirement about the frequency she had to call on accounts [Brown Dep.37-38].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that what Bannister-Hill, a former employee, recalls now about her account requirements is immaterial to plaintiff's claims.

115.     Denise Bannister Hill received a list of her accounts and determined who she would see on what days. Her travel to destinations would be in her expense reports

[Brown Dep.38-39]. The expense reports would show the number of times she visited her accounts other than those in Dallas [Brown Dep.40, 78].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant denies these allegations because Bannister-Hill was assigned the accounts previously assigned to Siciliano and was not simply given the list of her accounts on a daily basis.  See Def.'s SMF ¶45, admitted by plaintiff and deposition cites therein.  Defendant further states it is immaterial to plaintiff's claims as to when Bannister-Hill submitted her expense reports.

116.    With respect to Denise Bannister Hill most of her accounts during the year 2001 were in the Dallas-Fort Worth, Texas area. With respect to those outside of the Dallas-Fort Worth area, the distance of those accounts from Texas are as follows: Waco, Texas -96 miles; Temple, Texas - 134 miles; Austin, Texas - 195 miles; and Wichita Falls, Texas - 134 miles [Defendant Ex.MM].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that these statements are immaterial because Siciliano had nothing to do with defining the geographic boundaries of plaintiff's territory or that of the  other team members.

117.    During the time period between March and September of 2001, 77% of the account calls made by Denise Bannister Hill were in the Dallas, Texas area. During that time period, she called on her account in Wichita Falls on four occasions, Waco on five occasions, Temple on two occasions, Arlington on five occasions, Plano on one occasion and Fort Worth on four occasions. At no time during that time frame did she cover all of her accounts every two weeks [Bannister Hill Ex.1-7].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that these statements are immaterial because Siciliano had nothing to do with defining the geographic boundaries of plaintiff's territory or that of the  other team members.

The Bonus Points Program.

118.    Tony Siciliano had complete and total discretion in awarding bonus points [Siciliano Dep. 187- 88, 192-93, 272].

RESPONSE:   Admitted.


119.   On June 18, 2001 Denise Bannister Hill received 250 points from the COMPANY for doing a good job [Brown Dep.52, Ex.87].

RESPONSE:   Defendant states that this statement is immaterial to plaintiff's claims because the points were not awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.  See Dep. Trans. of Bannister-Hill at 52, attached as Exhibit "O" to Def.'s Mot. for Summ. J.


120.   On June 29, 2001 Denise Bannister Hill received points for great seal attack at Seton. Seal time refers to the cardiovascular counterparts [Brown Dep.53, Ex.87].

RESPONSE:   Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.  See Dep. Trans. of Bannister-Hill at 53, attached as Exhibit "O" to Def.'s Mot. for Summ. J.


121.   On August 30, Denise Bannister Hill received 150 points for great team work. She has no idea why [Brown Dep.53-54, Ex.87].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.  See Dep. Trans. of Bannister-Hill at 53-54, attached as Exhibit "O" to Def.'s Mot. for Summ. J.


122.   Denise Bannister Hill received 500 points for a new stocking at a hospital in Fort Worth [Brown Dep.54, Ex.87].

RESPONSE:   Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.

123.    On November 17, Denise Bannister Hill received 150 points for "thanks for your help" and  250 points for Cordis Q3. She has no idea why she received the them [Brown Dep.54, Ex.87].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.

124.    On November 17, 2001, Denise Bannister Hill received 1500 points for new stockings at three hospitals for Retavase [Brown Dep.54-55, Ex.87].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.

125.    In 2001 Caroline Kopecky was awarded 4850 bonus points [Kopecky Dep.62-64, Ex.87].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.

126.    On April 17 Caroline Kopecky was awarded 300 bonus points. She was awarded 150 points for helping at vascular basic and received 50 points for being a team player [Kopecky Dep.65-66, Ex.87].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because there is no evidence that these points were awarded to her by Siciliano, and, the awarding of bonuses is not an adverse employment action.

127.    During the year 2001 Antonio Siciliano awarded the PLAINTIFF 1,050 bonus points for four separate activities including two new accounts. He awarded Denise Bannister Hill 3,750 bonus points. He awarded Caroline Kopecky 4,850 bonus points. He awarded Randy Van Cleave 2,285 bonus points [PLAINTIFF Ex.87].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

128.     During 2001, the PLAINTIFF had new stockings at Covenant Medical Center, Decatur Memorial Hospital, Methodist Medical Center, Proctor Hospital, St. John's Hospital and Deaconess Hospital for which Mr. Siciliano gave her no bonus points [PLAINTIFF's Affidavit  66].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

129.     During the year 2001 the PLAINTIFF had a formulary acceptance at both Barnes Hospital and St. Francis Hospital. Mr. Siciliano awarded her no bonus points for the accomplishments [PLAINTIFF's Affidavit 67].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

130.     Notwithstanding her activities in organizing and promoting the Midwest Institute of Interventional Therapy Meeting during the summer of 2001, Mr. Siciliano awarded her no bonus points [PLAINTIFF's Affidavit 68].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

131.     During the year 2001, the PLAINTIFF developed Dr. Castaneda and Dr. Swischuk as national speakers in support of using Retavase for peripheral vascular disease. Each of those speakers spoke throughout the country on that topic. Mr. Siciliano awarded her no bonus points for that effort [PLAINTIFF's Affidavit 69].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

132.    The COMPANY promoted a clinical trial in the use of Retavase for the treatment of peripheral vascular disease. One of the PLAINTIFF's accounts, St. Francis Medical Center, was the top facility in the country in enrolling patients in that study and Dr. Castaneda, a staff member at that Hospital, was the Principal Investigator in the study. The PLAINTIFF received no bonus points for the effort [PLAINTIFF's Affidavit 70].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

133.    The PLAINTIFF obtained formulary approval at Barnes Hospital. Tony Siciliano does not know why he did not give her any bonus points for that accomplishment. He had a lot of discretion to award points [Siciliano Dep.199].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims because the awarding of bonuses is not an adverse employment action.

Siciliano's Criticisms of the PLAINTIFF.

134.    During the summer of 2001 St. Francis Medical Center was using Retavase for a study. St. Francis was the PLAINTIFF's largest account and she was instrumental in its participation in that study. Because it was using Retavase for that study, however, it did not have to pay the COMPANY for the use of Retavase. St. Francis used 88 vials of Retavase in the study which if sold to them would have produced revenue of over $96,000.00. If the PLAINTIFF had received credit for Retavase use by St. Francis in that study, she would have well exceeded her goal for selling Retavase. Mr. Siciliano during the summer of 2001 was aware of the PLAINTIFF's activities in the St. Francis account and the usage it was making of Retavase [PLAINTIFF's Affidavit 80].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that this statement is immaterial since there is no evidence that Plaintiff should have received any sort of credit for vials utilized in a study pursuant to company policy.

135.    Beginning in August of 2001 and continuing through the balance of her active employment with the COMPANY when the PLAINTIFF spoke to Mr. Siciliano he was constantly critical of her performance and the progress she was making with her accounts. During this time period, other managers and representatives of the COMPANY

such as Bill Pinon, the national sales manager, Michael Montgomery, M.D., the vascular physician for the COMPANY, Michelle Johnson, the cardiovascular manager, Keith Cramsey, the regional marketing manager, Linda Piccinini, a technical consultant, and Mike Varlotta, the product manager, were complimentary about her accomplishments [PLAINTIFF's Affidavit 65].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that this statement is immaterial because it is conclusory, contains inadmissible hearsay, and that unfair criticism from her manager does not constitute an adverse employment action.

136.    In the summer of 2001, the PLAINTIFF was traveling a great deal and did not have time available to do her paperwork. Accordingly, she could not always submit her expense reports on a weekly basis [PLAINTIFF's Dep. II, p. 119]

RESPONSE: Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that the statement is immaterial regarding plaintiff's amount of travel because it is conclusory and defendant admits that plaintiff was not able to submit her expense reports on time.

137.    On September 7, 2001 the COMPANY issued a report concerning the activities of vascular specialists in selling Cordis products. At that time the PLAINTIFF was 147% of her goal and the leader on her team in selling Cordis products [PLAINTIFF's Affidavit 79; Defendant Ex.NN].

RESPONSE: Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Without waiving said objection, Defendant admits this paragraph.

138.    On September 19, 2001 Mr. Siciliano issued an FCR to the PLAINTIFF which was highly negative. Contrary to his assertion in the report, the attendance at the Evansville dinner program was limited not because of poor follow through or inadequate recruit, but instead because of an unanticipated severe rainstorm. Mr. Siciliano was aware of that because he was in attendance. Furthermore, the key physicians and pharmacists did attend that program and as a result the PLAINTIFF was able to secure the Retavase business in Evansville. The Des Moines program was canceled because of the dissolution of the radiology group, not because of any lack of follow up on the PLAINTIFF's part.

The failure to secure catheter coverage at SLUH was not because of poor follow up, but instead because there was no permanent director of pharmacy at SLUH and the temporary director would not make a decision until the permanent director was appointed. Mr. Siciliano was aware of all of the foregoing when he made these inaccurate comments in the field contact report. During the time period of July, August and mid. September of 2001 the PLAINTIFF was covering her territory in accordance with his account coverage requirements except for the time period when she had health problems in August of 2001 and in September of 2001 because she was involved with the interventional therapy meeting [PLAINTIFF's Affidavit 75; PLAINTIFF's Dep. II, pp.240-241; Defendant Ex.LL].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant further states that the statement is immaterial because alleged unwarranted negative evaluations from Plaintiff's supervisor do not constitute an adverse employment action.

139. In his FCR of September 19,2001, Mr. Siciliano failed to note that the Evansville dinner program was poorly attended because of a rainstorm, but that the individuals who did attend were the individuals responsible for making selections of product and who decided to use retavase [PLAINTIFF's Dep. II, pp.244-245].

RESPONSE: Defendant further states that the statement is immaterial because alleged unwarranted negative evaluations from Plaintiff's supervisor do not constitute an adverse employment action.

140. Mr. Siciliano in his FCR indicated that on multiple times he had discussed with the PLAINTIFF the inadequacy of her territory coverage. He never raised that subject with her prior to July 6, 2001 when he sent to her his suggested coverage itinerary [PLAINTIFF's Affidavit 78].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this statement.

141. In his FCR Mr. Siciliano began requiring that the PLAINTIFF submit a weekly report stating progress which had been made on each account she visited. In his field progress report he was critical of the frequency that she responded to his voice mails and pages. His criticism was not accurate. Even though she was on the road and not permitted to respond through the use of her cell phone, she typically would respond to his voice mails and pages on the day she received them and always within twenty-four hours [PLAINTIFF's Affidavit 77].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that the statement is immaterial because alleged unwarranted negative evaluations from Plaintiff's supervisor do not constitute an adverse employment action.


142.    The FCR failed to mention a program conducted by the PLAINTIFF at MIIT, which drew over 150 attendees [PLAINTIFF's Dep. II, p.245].

RESPONSE:  Defendant states that the statement is immaterial because unfair criticisms from Plaintiff's supervisor do not constitute an adverse employment action.


143.    The status at SLUH was not due to any failure to follow through on the PLAINTIFF's part as suggested in the FCR, but instead because the Hospital had a temporary pharmacist who refused to make any formulary decisions until a permanent pharmacist was in place.      Additionally, a radiologist had left that Hospital [PLAINTIFF's Dep. II, pp.246-247].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that the statement is immaterial because alleged unwarranted negative evaluations from Plaintiff's supervisor do not constitute an adverse employment action.


144.    It would have been impossible for the PLAINTIFF to follow up on the accounts in Des Moines, Iowa because there was no radiology group in place and thus there was no radiologist for the PLAINTIFF to call upon [PLAINTIFF's Dep. II, p.248].

RESPONSE:  Defendant further states that the statement is immaterial to whether plaintiff suffered an adverse employment action.


145.    The slowness of account progress at Barnes Hospital was not due to the failure of the PLAINTIFF to follow through with that account as claimed in the FCR. The PLAINTIFF worked with the head pharmacist at Barnes on a consistent basis and provided her with information she had requested [PLAINTIFF's Dep. II, pp.248-249]. The PLAINTIFF's Work Schedule in the summer of 2001.

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp.

732, 740 n. 4 (C.D. Ill., 1997). Defendant further states that the statement is immaterial because alleged unwarranted negative evaluations from Plaintiff's supervisor do not constitute an adverse employment action.

146.    Prior to joining Mr. Siciliano's team as a vascular specialist the PLAINTIFF worked approximately four days each week in the field and reserved one day a week to do office work. This schedule was similar to the work schedule of other vascular sales specialists [PLAINTIFF's Affidavit 32].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that the statement is immaterial and speculative.

147.    Upon her return from medical leave, Tony Siciliano required that the PLAINTIFF begin spending five days each week working in the field calling upon accounts. This schedule left her no office time to complete paperwork and arrange for contacts and meetings [PLAINTIFF's Affidavit 33].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant denies the statement because it contradicts the plain language of Siciliano's routing schedule, see Exhibit "EE", attached to Def.'s Mot. for Summ. J., and Defendant further states that the statement is immaterial and speculative.

148.    As a normal matter, when the PLAINTIFF called upon an account, she might easily spend most of the day at that account waiting to speak, speaking with and observing procedures being performed by physicians. This time was necessary to developing a rapport with these accounts [PLAINTIFF's Affidavit 34].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that the statement is immaterial and speculative in that it only describes what Plaintiff "might" do.

149.    As a vascular specialist, when possible the PLAINTIFF would attempt to make appointments to see physicians prior to making a trip to their hospital. However, merely making an appointment with a physician did not guarantee that the physician would see her at the appointed time. Oftentimes the physician was delayed or otherwise occupied due to patient care. In those instances she would have to wait until he was available to see her [PLAINTIFF's Affidavit 51].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that the statement is immaterial, conclusory, and speculative.

150.    Even though she was concerned about his routing schedule, the PLAINTIFF followed Mr. Siciliano's direction by adhering to his schedule and calling upon her accounts with the frequency he demanded except for August of 2001 when she was ill and September of 2001 when she was committed to arranging for and attending an interventional therapy meeting [PLAINTIFF's Affidavit 53].

RESPONSE:  Defendant states that this statement is immaterial whether plaintiff complied with the "routing schedule" as plaintiff was not disciplined or otherwise subjected to an adverse employment action as a result of any non-compliance. Defendant also objects that the statement is vague and conclusory in that plaintiff admits she did not visit all her accounts prior to July 6, 2001, see Def.'s SMF ¶159, admitted by plaintiff, and therefore plaintiff's time-period for "compliance" is only the remainder of July of 2001.  Without waiving said objection, defendant denies the allegation because it contradicts plaintiff's expense reports for July of 2001. See Plaintiff's expense reports, attached as Exhibit "DD" to Def.'s Mot. for Summ. J.

151.    The PLAINTIFF began spending approximately two days of each week calling upon her accounts in St. Louis. Typically, on a short work day in St. Louis she would spend approximately 12 to 13 hours inclusive of her travel time. On a long day in St. Louis she would spend between 15 and 16 hours [PLAINTIFF's Affidavit 54].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant objects to this statement on the grounds that it is conclusory and speculative. Defendant further states that the statement is immaterial because she was not required by Siciliano to work this number of hours.

152.    She traveled to Peoria under Mr. Siciliano's routing schedule one day each week. Inclusive of travel time her Peoria work day normally lasted approximately 10 to 11 hours. However, if there was an evening program she would have to spend additional time [PLAINTIFF's Affidavit 55].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant objects to this statement on the grounds that it is conclusory and speculative. Defendant further states that the statement is immaterial because she was not required by Siciliano to work this number of hours.

153.    The PLAINTIFF normally traveled to Des Moines by car. Typically this involved an eight-hour drive each way. A Des Moines trip would typically involve a full two days of her work schedule [PLAINTIFF' s Affidavit 56].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant objects to this statement on the grounds that it is conclusory and speculative. Defendant further states that the statement is immaterial because she was not required by Siciliano to drive to Des Moines.

154.    The PLAINTIFF began going to Evansville and Owensboro approximately twice per month except for August and September of 2001. She would spend a full day in Evansville and the better part of a full day in Owensboro assuming the physician she was to call upon was available. Typically, she would spend between five and one half to eight hours each way in traveling to Owensboro and Evansville. She attempted to fulfill her Owensboro and Evansville trips in two full days. However, because of travel this generally meant that by the time she returned home from those trips it would be very late at night [PLAINTIFF's Affidavit 57].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant objects to this statement on the grounds that it is conclusory and speculative. Defendant also objects that the statement is vague and conclusory in that plaintiff admits she did not visit all her accounts prior to July 6, 2001, see Def.'s SMF ¶159, admitted by plaintiff, and therefore plaintiff's time-period for "compliance" is only the remainder of July of 2001.  Defendant further states that the statement is immaterial because she was not required by Siciliano to drive to Evansville and Owensboro.

155.    The travel regime the PLAINTIFF established after Mr. Siciliano's directive regarding her account coverage continued until she left active employment with the COMPANY. Typically, she was spending sixty to eighty hours a week in traveling to and calling upon her accounts. Additionally, she had to respond to Mr. Siciliano's requests and do paperwork. She normally did the paperwork on the weekends. This would involve an additional five to ten hours per week. During the time period between early July 2001 and October of 2001 she would typically spend between 70 and 90 hours a week working for the COMPANY. Prior to working under Mr. Siciliano, she would spend 50 to 55 hours per week on her job [PLAINTIFF's Affidavit 58].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant further states that this statement is immaterial in that Siciliano never directed her to work 70 – 90 hours per week.  Defendant objects to this statement on the grounds that it is confusing in that it contradicts prior statement in

Plaintiff's Additional Statement of Facts, which clearly state that Plaintiff did not comply with the routing schedule after July of 2001.  See, e.g., supra Pl.'s SMF ¶150.

156.    Because of the work schedule imposed upon her by Mr. Siciliano, the PLAINTIFF was forced to drop out of the Springfield Symphony Choir and discontinued socializing with friends [PLAINTIFF's Affidavit 59].

RESPONSE:  Defendant states that this statement is immaterial in that Siciliano did not request that she do these things.  Without waiving said objection, defendant admits the statement.

157.    In attempting to comply with Mr. Siciliano's travel schedule, respond to the tasks he would message the PLAINTIFF and do the necessary paperwork which was a part of her job she was getting approximately five hours sleep per night. When she was on the road she would typically eat food from fast food restaurants in the car while she was driving. On several occasions she had to pull over to the side of the road late at night to sleep because she was exhausted and was about to fall asleep while driving. On three occasions she asked a friend to drive her on trips because she was simply too tired to drive and was afraid she would fall asleep at the wheel [PLAINTIFF's Affidavit 60].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant objects to the statement because it is vague, conclusory and speculative.  Defendant also states the statement is immaterial to plaintiff's claims and whether plaintiff was subjected to an adverse employment action, and, that plaintiff was not required by Siciliano to drive to her accounts.

158.    In late September of 2001 the PLAINTIFF was responsible for representing the COMPANY at a meeting in Oakbrook, Illinois of the Midwest Institute of Interventional Therapy. The attendees at that meeting consisted of over 150 interventional radiologists and vascular surgeons as well as their support staff. She was at that meeting for a full five days. Typically, she spent approximately 18 hours each day manning a booth and entertaining physicians. A great deal of time was required of her in both August and September in preparing for that meeting, arranging for speakers, coordinating speaker schedules and contacting physicians encouraging them to attend the meeting. Because of her activities in organizing for and attending that meeting, she did not call on Evansville, Indiana, Owensboro, Kentucky or Des Moines, Iowa that month. Immediately following that meeting, she drove to Evansville, Indiana and Owensboro, Kentucky to call on her accounts in those cities [PLAINTIFF's Affidavit 64].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant objects to this statement on the grounds that it is confusing in that it contradicts prior statements in Plaintiff's Additional Statement of Facts, which clearly state that Plaintiff did not comply with the routing schedule after July of 2001.  See, e.g., supra Pl.'s SMF ¶150.  Defendant states that this statement is immaterial because her account coverage requirement is not an adverse employment action, and, plaintiff was not disciplined for any non-compliance.

Siciliano's Contacts with the PLAINTIFF.

159.    Beginning in May of 2001 and continuing through October of 2001, Mr. Siciliano began contacting the PLAINTIFF frequently by either telephone, email, voice mail or pages. Typically, on these contacts he would assign her a task and establish a very short turnaround time for completing it. The PLAINTIFF began receiving voice mails and pages from him multiple times each day. Given her travel schedule, she could not perform the tasks he assigned her immediately and often had to perform those tasks during the evening or late at night. The frequency of his contacts with the PLAINTIFF and the demands increased with passage of time. Through the summer and early fall of 2001, his assignments normally involved fairly trivial matters. Nonetheless, he demanded that she perform them immediately [PLAINTIFF's Affidavit 35].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant objects to this statement because it is conclusory, vague and speculative.  Defendant further states that this statement is immaterial because receiving telephone calls and work assignments from a supervisor are not adverse employment actions.

160.    Following the June 2001 sales meeting Mr. Siciliano increased his frequency in paging the PLAINTIFF, contacting her by voice mail and email. Typically, he would contact her between 5 and 15 times a day. Most often his inquiries were fairly trivial but were nonetheless ones he wanted an immediate response from her. Because of the PLAINTIFF's travel schedule it was often impossible for her to respond to his inquiries within the time he had requested. With the passage of time the subject matter of Mr. Siciliano's inquiries became increasingly trivial and repetitive. Most of them had very little relevance to the PLAINTIFF's sales activities for the COMPANY. During these contacts he became increasingly critical of the PLAINTIFF's failure to respond immediately to his inquiries. Because she was on the road and not always in areas which were accessible for telephonic communication even by cell phone or page, she could not respond as quickly as he wanted and informed him of that problem [PLAINTIFF's Affidavit 45].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant objects to this statement because it is conclusory, vague and speculative, especially as to the number of calls and pages. Defendant further states that this statement is immaterial because receiving telephone calls and work assignments from a supervisor are not adverse employment actions.

161.    During her employment with the COMPANY, the PLAINTIFF's earlier supervisors had expected her to respond to their emails, pages, or voice mails within 24 hours unless it was an emergency. Mr. Siciliano, by contrast, wanted immediate responses. Mr. Siciliano would not approve cell phone expense, which exceeded $100.00 a month [PLAINTIFF's Affidavit 46].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).

162.    Mr. Siciliano was insistent that the PLAINTIFF immediately return his pages and voice mails when she was on the road. He would not allow her to use a cell phone. Instead she had to call him using the COMPANY issued telephone credit card. Consequently, when she had to return a page or telephone call she would have to leave the road and locate a pay phone from which to call him [PLAINTIFF's Affidavit 61].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).    Defendant further states that it is immaterial as to whether plaintiff was subjected to an adverse employment action.

163.    In 2001 Denise Bannister Hill communicated with Tony Siciliano through voice mail. He would call her or leave voice mails. During the three years she worked for him Denise Bannister Hill on average heard from Tony Siciliano about 0 to 1 time a week [Brown Dep.67-68].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).    Defendant further states that it is immaterial as to whether plaintiff was subjected to an adverse employment action.

164.    Denise Bannister Hill never had to fill out any type of report weekly or monthly while a vascular sales specialist on Tony Siciliano's team [Brown Dep.61-62].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).         Defendant further states that it is immaterial as to whether plaintiff was subjected to an adverse employment action.


The PLAINTIFF's Effort to Leave the Siciliano Team.

165.    As the summer of 2001 passed, the PLAINTIFF was becoming increasingly concerned about her relationship with Mr. Siciliano and her inability to please him. She had been in pharmaceutical sales at that time for over 25 years and this was the first supervisor with whom she had any type of significant relationship problem. She felt it was in her best interests to look for other employment opportunities either within the COMPANY or with other Johnson and Johnson subsidiaries. She interviewed for a position with Ethicon and was tentatively offered a position. In order for her to secure that position, she was required to secure a release from her supervisor under Johnson & Johnson recruitment policies [PLAINTIFF's Affidavit 72].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).         Defendant further states that it is immaterial as to whether plaintiff was subjected to an adverse employment action, as plaintiff does not even argue in her brief that it is.


166.    On September 10, 2001 the PLAINTIFF emailed Antonio Siciliano seeking his permission to apply for other job opportunities within the Johnson & Johnson Companies. She did this because of the treatment she was receiving from Mr. Siciliano [PLAINTIFF's Dep. II, pp.234-235 and Defendant Ex.II].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).   See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).         Defendant further states that it is immaterial as to whether plaintiff was subjected to an adverse employment action, as plaintiff does not even argue in her brief that it is.


167.    Tony Siciliano recalls the PLAINTIFF indicated she would like to find other employment opportunities at Johnson & Johnson in September of 2001 [Siciliano Dep.257-258]. The COMPANY's regional director promptly gave the PLAINTIFF

permission to seek other job opportunities. Tony Siciliano had no role in giving that approval [Siciliano Dep.258].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant further states that it is immaterial as to whether plaintiff was subjected to an adverse employment action, as plaintiff does not even argue in her brief that it is.

168.    When Tony Siciliano prepared the FCR on September 19, 2001 he was aware the PLAINTIFF had made the request to seek other employment with Johnson & Johnson [Siciliano Dep.259, Ex.23].

RESPONSE: Defendant admits this statement.

169.    Tony Siciliano, when he interviewed an employee who was working in another position for either the COMPANY or another Johnson & Johnson Company, asked for a couple of the recent FCRs for that employee in considering the employee for the position [Siciliano Dep.280].

RESPONSE: Defendant states that this statement is immaterial as to whether plaintiff suffered an adverse employment action as plaintiff does not even argue in her brief that it is.

170.    On September 13, 2001 the PLAINTIFF was told by Lisa Huston, a Johnson & Johnson corporate recruiter, that in order for the PLAINTIFF to receive a position with Ethicon Mr. Siciliano had to be "on board" with her transfer and he was "not on board" with the PLAINTIFF's transfer request [PLAINTIFF's Affidavit 73; Dep. II, p.237].

RESPONSE: Defendant states that this statement is immaterial as to whether plaintiff suffered an adverse employment action as plaintiff does not even argue in her brief that it is. Defendant also objects to this statement on the ground that it is hearsay.

The PLAINTIFF's Health Problem.

171.    In early August of 2001 the PLAINTIFF began noticing that her heart was racing and she felt very light headed and weak. She was diagnosed with atrial fibrillation and was in the hospital overnight and treated by Dr. Brian Miller, a cardiologist. Throughout August, September and into October 2001, she on a number of occasions

went to the emergency room at the hospital because of those same symptoms [PLAINTIFF's Affidavit 62; PLAINTIFF's Dep.I1, p.199].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).    Without waiving said objection, defendant admits this statement.


172.    Dr. Brian Miller, a cardiologist, first saw the PLAINTIFF as a patient on August 2, 2001. His diagnosis at the time was atrial fibrillation. Atrial fibrillation is a very rapid, chaotic electrical activity in the upper chambers of the heart [Miller Dep.6-7].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).    Without waiving said objection, defendant admits this statement.


173.    Symptoms of atrial fibrillation may be none to shortness of breath, skipping of the heart, fatigueability, exercise incapacity, chest pain, chest pressure and aching to stroke and heart failure [Miller Dep.7-8].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims.


174.    Extreme stress can cause atrial fibrillation [Miller Dep.13].

RESPONSE:  Defendant admits this statement.


175.    In August 2001 Dr. Miller's notes show that the PLAINTIFF was having intermittent palpitations with increased job stress [Miller Dep.14].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.


176.    Atrial fibrillation is not common for a person of the PLAINTIFF's age [Miller Dep. 15-16].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

177.    Dr. Miller believed the PLAINTIFF's atrial fibrillation in 2001 was associated with increasing amounts of stress in her job [Miller Dep.l9-20].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

178.    Atrial fibrillation can be very severe and life threatening [Miller Dep.33-34].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims.

179.    From his 22 years of practice, Dr. Miller believes stress is a common cause of atrial fibrillation [Miller Dep.37].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims.

180.    Celina Tsang has practiced internal medicine in Sangamon County, Illinois since 1991 [Tsang Dep.106-107].

RESPONSE:   Defendant admits this statement.

181.    Atrial fibrillation is a serious medical condition in which cardiac output is reduced by thirty percent [Tsang Dep.116]. Dr. Tsang diagnosed the PLAINTIFF's episode of atrial fibrillation as severe and hospitalized her [Tsang Dep. 116-117].

RESPONSE:   Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims.

182.    In the PLAINTIFF's situation Dr. Tsang believes her attack of atrial fibrillation was caused by her exposure to stressful events because the typical organic causes of the condition had been eliminated and the PLAINTIFF's symptoms occurred in the wake of stressful events [Tsang Dep.81-84, 1 14-1 15].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims.

183.    On April 29, 2000 Dr. Tsang administered a Zung Test to the PLAINTIFF. It is a questionnaire which assists in making a diagnosis of depression. The test indicated that the PLAINTIFF was in normal limits on both the anxiety and depression score [Tsang Dep.107- 110]. At no time either in April of 2000 or prior did Dr. Tsang ever recommend the PLAINTIFF take time off work because of psychiatric symptoms [Tsang Dep.110].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

184.    In October of 2001 Dr. Tsang saw the PLAINTIFF. At that time the PLAINTIFF was very tearful and evidenced symptoms of depression [Tsang Dep. 111-112].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

185.    In the fall of 2001 Dr. Tsang concluded that the PLAINTIFF needed the care of a psychiatrist [Tsang Dep. 113].

RESPONSE:   Defendant states that this statement is immaterial to plaintiff's claims.

186.    Susan Yarrington has a master's degree in counseling psychology. She is licensed by the state of Illinois as a clinical professional counselor. Between the mid l990s and 2001 Ms. Yarrington saw the PLAINTIFF periodically for situational stress. In those situations the PLAINTIFF was struggling to cope with stress arising from an external source [Yarrington Dep.6, 116].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that this statement is immaterial to plaintiff's claims.

187.    Between the mid 1990s and July of 2001 Ms. Yarrington believed that the PLAINTIFF was capable of coping and dealing with the stressors which brought the PLAINTIFF to see her [Yarrington Dep.118-119].

RESPONSE:  Defendant states that this statement is immaterial to plaintiff's claims.

188.    Between the mid l990s and July of 2001 when Ms. Yarrington saw the PLAINTIFF she diagnosed her for adjustment disorder which is often referred to as situational depression or situational anxiety. It is a short-term condition which all people go through [Yarrington Dep. 119-120].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).  Defendant states that this statement is immaterial to plaintiff's claims.

189.    When the PLAINTIFF met with Susan Yarrington in August of 2001 she was upset and fearful of her supervisor, Tony [Yarrington Dep.47].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

190.    Beginning on August 8,2001 and continuing to the present, Susan Yarrington has treated the PLAINTIFF on a relatively consistent basis [Yarrington Dep.120-121].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims.

191.    When Susan Yarrington began seeing the PLAINTIFF on August 8, 2001 the PLAINTIFF's dominant concerns were her problems at work [Yarrington Dep.121-122].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

192.    When Susan Yarrington saw the PLAINTIFF on December 13, 2001 she characterized the PLAINTIFF as being "dismantled" and described her as being a "lump on a couch". At that time the dominant concern on the PLAINTIFF's part was her problems at work [Yarrington Dep.122].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

193.    The PLAINTIFF in Ms. Yarrington's view had remained "dismantled" at all times since December 13, 2001 [Yarrington Dep.122-123].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

194.    While treating the PLAINTIFF in the late fall of 2001 Ms. Yarrington noticed that she suffered from symptoms of post-traumatic stress disorder. These symptoms were: tearfulness, hypervigilance, a reduction in cognitive thought, and a sense of hopelessness and powerlessness in situations where she felt threatened [Yarrington Dep.124-125].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

195. In November of 2001 the PLAINTIFF began treatment with Joseph Bohlen, M.D., a psychiatrist. Dr. Bohien diagnosed the PLAINTIFF to suffer from major depression, single episode, severe [Bohien Dep.25-26].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

196. It is the opinion of Dr. Bohlen that the cause of the PLAINTIFF's major depression is the treatment she received from her supervisor for the COMPANY during the year 2001 [Bohlen Dep.26-30].

RESPONSE: Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

197. Because of the severity of her symptoms of atrial fibrillation and difficulties she had in adjusting to the medications prescribed because of that condition, the PLAINTIFF cut back her travel during August of 2001 and, at the advice of her physician, took two weeks off work. As a result, she did not that month go to either Des Moines, Iowa, Evansville, Indiana or Owensboro, Kentucky. Because of the severity of the symptoms of atrial fibrillation and the periodic medical care she was receiving, she did not feel comfortable making lengthy trips from her home. She did, however, during that month call regularly on her accounts in both St. Louis and Peoria [PLAINTIFF's Affidavit 63].

RESPONSE: Objection. Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D). See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this statement.

The PLAINTIFF's Departure from the COMPANY.

198.    In late September and into October of 2001 the PLAINTIFF began suffering from symptoms that she had never earlier experienced. She found herself uncontrollably crying at various periods of time and often at inappropriate times. She began developing trouble concentrating and focusing on tasks. Even though she rarely had more than five hours available to sleep she found it difficult to sleep. During this time period she continued to have a rapid heartbeat and symptoms of atrial fibrillation. She began developing headaches of an intensity that she had never earlier experienced. On October 19, 2001 Dr. Celina Tsang recommended that she discontinue working because of these symptoms [PLAINTIFF's Affidavit 81].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

199.    In October of 2001 Dr. Tsang as a part of her treatment plan for the PLAINTIFF advised her not to work for at least a month. At that time, in addition to the atrial fibrillation Dr. Tsang diagnosed the PLAINTIFF to be suffering from depression secondary to acute stress [Tsang Dep.71-74].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims as plaintiff's subjective response to job stress is not relevant to whether she was subjected to an adverse employment action.

200.    Dr. Tsang again saw the PLAINTIFF on November 19, 2001. At that time she recommended to the PLAINTIFF that she not return to work at least until she had seen a psychiatrist [Tsang Dep.75-77].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Defendant states that this statement is immaterial to plaintiff's claims.

201.    After the PLAINTIFF left active employment with the COMPANY she began drawing both short and then long-term disability benefits. Eventually, she also began securing social security disability benefits. She has at all times remained unable to resume her work duties for the COMPANY. Her disability benefits are significantly less

than the salary she earned while working for the COMPANY [PLAINTIFF's Affidavit 82].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997). Without waiving said objection, Defendant admits this statement.

202.    In 2002 Siciliano hired Lori Schneiderhan to fill the PLAINTIFF's position. She is 30 years of age [Siciliano Dep.43-47].

RESPONSE:  Objection.  Defendant objects to this statement of fact to the extent it violates Local Rule 7.1(D).  See Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732, 740 n. 4 (C.D. Ill., 1997).    Without waiving said objection, defendant admits that Schneiderhan was hired but denies that the citation provided by plaintiff supports the remaining allegations.

### III.    ARGUMENT

Plaintiff contests little of Defendant's summary judgment motion, and makes little effort to salvage the vast majority of her complaint's allegations.  Plaintiff does not claim this is a direct evidence case or that she has direct evidence of discrimination and proceeds solely under the McDonnell Douglas standard.

Defendant argued in its summary judgment motion that Plaintiff did not suffer an adverse employment action as a result of her territory and account assignments.  Plaintiff does not now claim that Siciliano gave her a less lucrative sales territory or assigned her a larger territory that was more difficult to cover, because, as she admitted in her deposition and in her response to defendant's statement of facts, she knew the size of her territory when she took the job.  Def.'s SMF 14,[1] 21, 22 & 23.  Furthermore, she admits she hand-selected the vast majority of her accounts, which were approved by a different supervisor. Def.'s SMF ¶¶24-32.

Plaintiff fails to state a prima facie case for age or gender discrimination, and she seems to have focused only on age by comparing herself only to the younger female team members in her response, because she cannot satisfy two elements: (1) that she suffered an adverse employment action, and (2) that she was not treated as well as other similarly situated individuals.  Finally, Siciliano clearly had legitimate business reasons for his

---

[1]       Apparently, Plaintiff denies this fact on the basis that when she took the job, the scope of her territory was only temporary.  See Plaintiff's Affidavit ¶7.  On the other hand, in her deposition, Plaintiff testified:

> Q   Was it your understanding the territory would be larger?
> A   Yes.

Plaintiff's Deposition, Part I, at 156, attached as Exhibit C to Def.'s Motion for Summary Judgment.  To the extent her affidavit is inconsistent with her deposition, it should be disregarded.  Pippins v. Adams County Jail, 851 F. Supp. 1228, 1235 (C.D. Ill., 1994). Furthermore, Plaintiff admits that Siciliano had nothing to do with the size of her territory.  Def.'s SMF ¶23.

decisions, most of which were discussed in Defendant's Motion for Summary Judgment, and Plaintiff has absolutely no evidence of pretext.

### A.    PLAINTIFF WAS NOT SUBJECTED TO AN ADVERSE EMPLOYMENT ACTION

Plaintiff argues that she suffered an adverse employment action in one of two ways: (1) defendant diminished the financial terms of her employment, and (2) her working conditions were drastically changed so as to become unreasonably harsh.

### 1.    No Evidence that the Financial Terms of Her Employment Were Diminished.

Plaintiff offers little argument, and, no evidence to support her first claim that Siciliano diminished the financial terms of her employment.   The only argument she appears to make to support this claim is that Siciliano removed two accounts, Memorial and Proctor, from her portfolio.  Defendant thoroughly discussed the history of Plaintiff's account list and the process by which her account list was narrowed to twelve accounts in its Motion for Summary Judgment, and how, under the law, the account assignments are not an adverse employment action.

Plaintiff's only response is that these accounts were potentially lucrative.  See Pl.'s Resp. at 63 (describing the accounts as "promising"); see also Plaintiff's Statement of Facts ¶¶53, 54, & 56.  Plaintiff's arguments here are wholly speculative and should be disregarded.  The speculative financial impact on Minor from the removal of these accounts is insufficient to constitute an adverse employment action.

Nor does Plaintiff have any evidence that the removal of these accounts was a pretext for discrimination.  She admits that the number of accounts assigned to her had to be lowered to twelve pursuant to Operation Seal. Def.'s SMF ¶¶49-51. She offers no

evidence that these accounts were removed other than for that reason.[2]  She also admits that Siciliano based his decisions regarding her account list by speaking with Michelle Johnson, another manger in Minor's district.  Def.'s SMF 64.[3]  Plaintiff admits that Johnson also had an interest in what accounts were assigned to her.  Def.'s SMF ¶67.

Although Minor denies that Siciliano's decisions about her accounts were a compromise, <u>see</u> Def.'s SMF ¶69, she fails to support her denial with any evidence.  Her denial cites to paragraphs 51-58 of Plaintiff's Statement of Facts.  Seven out of eight of those paragraphs rely solely on Plaintiff's Affidavit, which only discusses her subjective opinion that the accounts were potentially lucrative.  Paragraph 55 states that Siciliano did not know why plaintiff was not assigned Memorial citing to Siciliano's deposition pp. 39-40.  In fact, Siciliano testified unequivocally "it was a balancing act… at the end of the day, it became [a] compromise…"  <u>See</u> Exhibit D to Def.'s Mot. for Sum. J. at 40.

> ## **2.**  **Siciliano's Account Coverage Requirement Was not an Adverse Employment Action.**

Plaintiff bases her claim on essentially one working condition – the two-week account coverage requirement.  Her manager, Siciliano, pursuant to this requirement, prepared for her a suggested "routing schedule."[4]  <u>See</u> <u>Exhibit</u> <u>EE</u> to Def.'s Motion for Summary Judgment.   Although the email accompanying the routing schedule states it is a "sample," Plaintiff claims the routing schedule was a requirement and that it constituted

---

[2]    Plaintiff argues that it is immaterial that the accounts dropped from Minor's list were not reassigned to any other VS.  <u>See</u> SMF ¶74.  The significance of them being dropped and not reassigned is that Centocor obviously did not find them to be as potentially lucrative as Minor did.

[3]    Plaintiff failed to respond to Def.'s SMF ¶64 and therefore it should be deemed admitted.

[4]    Plaintiff testified in her deposition that she failed to give Siciliano a routing schedule.  In her affidavit, she claims she did in fact provide him with one.  Pl.'s Affidavit ¶ .  The fact that her affidavit is inconsistent with her deposition is insufficient to create an issue of fact, and should be disregarded.  <u>Pippins v. Adams County Jail</u>, 851 F. Supp. 1228, 1235 (C.D. Ill., 1994).

an adverse employment action under Tart v. Illinois Power Co., 366 F.3d 461 (7th Cir.

2004).

Plaintiff argues her case meets the Tart standard to avoid the tougher evidentiary

standard under a constructive discharge theory.  Driver v. Arbor Management, Inc., 2001

WL 1155089 (N.D. Ill., Sept. 26, 2001)(holding that proof of constructive discharge is a

high hurdle for a plaintiff to overcome).  Plaintiff makes a passing argument that her

working conditions are an adverse employment action under a constructive discharge

theory.  Pl.'s Resp. at 61.  But under the law of this Circuit, working long hours and

being supervised by an insufferable boss do not constitute an adverse employment action

rising to a constructive discharge.  Darnell v. Target Stores, 16 F. 3d 174, 178-179 (7th

Cir. 1994).

The Tart standard is equally difficult to meet; the change in working conditions

must be objectively extreme and punitive.  Tart, 366 F.3d  at 475.  In a case cited by

Plaintiff, Ribando v. United Airlines, Inc., 200 F.3d 507 (7th Cir. 1999), the court

specifically characterized acts under this standard as "punishments."  Id. at 511.

In Tart, two black plaintiffs were subjected to transfers out of their positions as

punishment for mishandling a gas-leak repair job.  Tart, 366 F.3d at 468.  The plaintiffs

had jobs involving skilled-labor, telephone-based customer-service, computer use and

independent responsibilities.  Id. at 473.  They were transferred to ditch-digging during

winter months.  Id.  This transfer was coupled with a suspension and a docking of

overtime pay.   Id. at 467. There can be no doubt that these assignments can only be

characterized as extremely punitive actions.

In the case at bar, Plaintiff's perceived increase in the coverage requirement cannot be characterized as punitive in any sense of the word. The routing schedule was intended, as she admits, to be a coaching document. Def.'s SMF 165. While Plaintiff interpreted this document to mean she had to work ninety-hour weeks, Plaintiff's <u>subjective</u> interpretation of the routing schedule is not controlling. The working conditions must "objectively" create a hardship. <u>Tart</u>, 366 F.3d at 475. Defendant has demonstrated in its Motion for Summary Judgment why Siciliano's account coverage requirement is not an adverse employment action.

Nowhere on this document does it suggest she had to work ninety hours per week. Nowhere on this document does it say she had to drive sixty to eighty hours per week as Plaintiff claims, or to drive at all. Pl.'s SMF ¶155. Nowhere on this document does it say she had to work weekends or give up her personal life-activities. Plaintiff can point to no writing or oral testimony of any kind to support her allegation that she was required to work ninety-hour weeks.

She claims most of her time was spent traveling on the road. Pl.'s SMF ¶¶153-155. This was Plaintiff's choice not Siciliano's. Plaintiff's subjective preferences do not make all job-responsibilities suddenly adverse employment actions. <u>See</u>, <u>e.g.</u>, <u>O'Neal v. City of Chicago</u>, 392 F.3d 909, 913 (7th Cir. 2004); <u>Johnson v. Cambridge Indus.</u>, 325 F.3d 892, 901 (7th Cir. 2003). Plaintiff chose to drive to her accounts whereas the routing schedule is based on travel by <u>air</u>, not driving. In addition, her supervisor did not <u>require</u> her to spend more than a few hours at any one place, although she claims that in her view she had to stay for many hours. <u>See</u> Pl.'s Affidavit ¶49.

Plaintiff cannot claim it is objectively harsher to be required to go to Owensboro, Kentucky or Iowa or Evansville, Indiana twice a month. It cannot be equated with digging ditches in the middle of winter. It is not an "objective" hardship. It was hard for plaintiff because of her <u>subjective</u> circumstances, i.e., where she lived and how she chose to commute. <u>See</u> Pl.'s Affidavit ¶49.

Plaintiff's representations about her alleged compliance with Siciliano's routing schedule are overblown and not supported by her own statement of facts, affidavit and admissions. It is actually a very narrow timeframe in which she experienced her alleged onerous working conditions.

She admits that between April of 2001, when she returned from a sick leave, and until the end of June of 2001, she never went to Owensboro or Iowa. Def.'s SMF ¶159. During this time frame she infrequently went to Indiana and primarily traveled in Illinois and to St. Louis. Plaintiff states in Plaintiff's Additional Statement of Facts that she did not travel in August of 2001 or September of 2001. <u>See</u> Pl.'s SMF ¶154. Thus, according to her own version of events, she only attempted to comply with the routing schedule in July of 2001.

Plaintiff offers no evidence by way of expense reports to support her claim that she actually complied with the proposed routing schedule. Reviewing her expense reports for July of 2001 shows no indication she went to Owensboro, Kentucky. <u>See</u> <u>Exhibit RR</u> attached to this brief, and previously attached to Def.'s Motion for Summary Judgment as part of <u>Exhibit DD</u>. They show she went to Iowa once, and she went to Evansville, Indiana twice. Significantly, she admits that the expense reports are the only way her supervisor could tell where she went. Def.'s SMF ¶155. Even if it is assumed

she complied with the routing schedule, she only went to Owensboro and Iowa twice that month.  Going to Owensboro and Iowa twice in one month can hardly amount to an adverse employment action and Plaintiff offers no authority that it is.

### 3.    An Inaccurate FCR Is Not an Adverse Employment Action.

For the reasons stated in Defendant's Motion for Summary Judgment, assuming that Siciliano's FCR for Q3 of 2001 was inaccurate or unfair does not make it an adverse employment action.  It should be noted that Plaintiff ignores the <u>positive</u> statements in the FCR.  Plaintiff admits that her FCRs were not placed in her personnel file.  Def.'s SMF ¶118.  Plaintiff claims that misstating a sales figure on plaintiff's Q3 FCR was an adverse employment action.  Plaintiff's claim is undermined by the fact that she admits that Siciliano based the FCR on sales information which was not up-to-date.  Def.'s SMF ¶205.  She admits that what Siciliano documents on the FCRs for sales figures have no affect on what Minor actually got paid.  Def.'s SMF ¶206.  Since she knows it was a mistake, and that it did not affect her income, she cannot now claim she was adversely affected by it.

### 4.    Plaintiff Cannot Bootstrap Damages to Show Liability.

Plaintiff argues that Siciliano's conduct jeopardized her health.  Plaintiff bootstraps her doctors' testimony about causation to buttress her lack of evidence on liability.  None of her doctors opined that Siciliano's actions were extreme or objectively harsh.  Plaintiff's reliance on <u>Meyer v. Brown & Root Construction Co.</u>, 661 F.2d 369 (7th Cir. 1981) is misplaced. The court in <u>Meyer</u> held that the danger to plaintiff's health must be an <u>objective</u> one.  <u>Meyer</u>, 661 F.2d at 372.  In <u>Meyer</u>, the plaintiff, who was pregnant, had her job changed from a desk-job to working in a warehouse engaging in

heavy manual labor including lifting.  A plaintiff's subjective reaction to job stress does not make the cause of the stress an adverse employment action.  This is the holding of Spence v. Maryland Casualty Co., 995 F.2d 1147, 1157 (2nd Cir. 1993)(holding that defendant's actions were not sufficient to support a claim that defendants deliberately set out to make plaintiff ill).  If plaintiff were correct, any job stress that made someone ill would constitute an adverse employment action.

### B.    SICILIANO TREATED OTHER TEAM MEMBERS EQUALLY.

Even if the Court finds Plaintiff was subjected to an adverse employment action, Plaintiff cannot show she was treated differently from other team members.  As set forth in Defendant's Motion for Summary Judgment, the account coverage requirement was the same for all VS under Siciliano.  Plaintiff admitted the following key facts to support this: she admits that Siciliano discovered the other VS were not covering their territories as adequately as he wanted.  Def.'s SMF ¶168.  She admits that Siciliano instructed the other VS in his FCRs to them that they should cover their accounts every two weeks.  See Def.'s SMF ¶¶ 133(a) (Van Cleave, May of 2001), 180 (Kopecky, August of 2001), 188-192 (Bannister-Hill, Q3 of 2001), 194-198 (Van Cleave, Q3 of 2001).

In his Q3 FCR for Bannister-Hill, he criticizes her account coverage.  Def.'s SMF ¶191(d).  He further instructs her that she had to complete her account coverage every two weeks.  Def.'s SMF¶192(a).   In his Q3 FCR for Van Cleave, he advises him that he was not covering his accounts in a two-week time period, and, advises him he had to do so.  Def.'s SMF ¶¶197-198.

In addition, Plaintiff offered no evidence of how many hours per week the other VS spent working.

### III.     ACCOUNT COVERGE REQUIREMENT WAS JUSTIFIED FOR LEGITAMITE BUSINESS REASONS.

Defendant showed in its Motion for Summary Judgment the several reasons for Siciliano's account coverage requirement. The account coverage requirement was not a pretext for discrimination. Plaintiff admits that Siciliano told her that it was necessary for her to "get in front of every account to let them know you are back" due to her "absence from her territory…" Def.'s SMF ¶124. Logically, Siciliano wanted Minor, a company sales representative, to visit all of her accounts in person since she had been off for such a long period of time.

For almost two months after her she returned from sick leave in April of 2001, Plaintiff failed to visit her accounts in Iowa and Owensboro, which she admits. Def.'s SMF ¶158. The routing schedule proposed by Siciliano, whether it was a sample or a requirement, was a legitimate and appropriate response to Plaintiff's account coverage deficiency. It was not disciplinary. The routing schedule was intended, as Plaintiff admits, to be a coaching document. Def.'s SMF ¶165.

In addition, the overwhelming, undisputed evidence demonstrates Siciliano's honest belief was that the VS under him should cover their accounts every two weeks. His own approach to territory coverage had been, prior to being promoted, to cover his territory every two weeks. Def.'s SMF ¶169.[5] Plaintiff argues he did not coach the other VS but, admits that Siciliano discovered all VS were not covering their territories the way he liked, Def.'s SMF ¶168, and admits, as discussed above, that he included in FCRs to all of them that they must cover their accounts every two weeks. Plaintiff further admits he consulted with his supervisor, Bob Russell, about the VS under him and their

---

[5]     Plaintiff failed to respond to Def.'s SMF ¶169 and therefore it should be deemed admitted.

lack of account coverage; Russell advised him that every VS needed coaching on this matter.  SMF ¶170-171.

Plaintiff also objects that the statements of facts regarding Siciliano's conversation with his superior, Bob Russell, should be disregarded because they are hearsay. These statements are admissible under Federal Rule of Evidence 803(3) because they demonstrate Siciliano's belief in company policy and that he honestly believed he had to coach his VS, including Minor, about their account coverage. See, e.g., Vallabhapurapu v. First National Bank of Chicago, 998 F. Supp. 2d 906, 909 n.3 (N.D.Ill.,1998)(hearsay admissible to show supervisor's honest belief).

Finally, Plaintiff claims it is immaterial that Siciliano's SICP payment was tied to the performance of his VS.  See Def.'s SMF ¶109, 136, 219.  These facts are eminently material in that it is obviously Siciliano's primary motivation for coaching his VS. Plaintiff admits she was coming in last for August of 2001 and the third quarter, see SMF ¶178, which means she would have received no SICP payment.  She claims it is immaterial that if she remained ranked 22 she would not receive a product incentive for the third quarter. Def.'s SMF ¶179.  It is not immaterial because it would have an adverse impact on Siciliano's SICP payment.  Siciliano could not simply let Minor do whatever she wished, whenever she wished.  He had to coach her because his own compensation was at stake.

## CONCLUSION

For all of the foregoing reasons, defendant CENTOCOR, INC. respectfully requests that this Court grant Defendant's Motion for Summary Judgment and dismiss

Plaintiff M. JANE MINOR's claims under the ADEA and Title VII claims and award

CENTOCOR, INC. its costs.

Respectfully submitted,

**Defendant
CENTOCOR, INC.**

By: s/ Linzey D. Jones
    Linzey D. Jones, Bar No.
    6183113
    John M. Broderick, Bar No.
    6255668
    PUGH, JONES, JOHNSON, &
    QUANDT, P.C.
    180 North LaSalle Street, Suite
    3400
    Chicago, IL 60601
    (312) 551-1002
    (312) 551-0804 Fax
    ljones@pjjq.com

    David L. Drake
    Drake, Narup & Mead, P.C.
    107 East Allen Street
    Springfield, Illinois 62707
    (217) 528-9776
    (217) 528-9401 Fax