# United States Court of Appeals

## For the Seventh Circuit

### Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**

DATE: August 28, 2006

TO: John M. Waters
United States District Court
Central District of Illinois
151 U.S. Courthouse
600 E. Monroe Street
U.S. Courthouse & Federal Building
Springfield, IL  62701

FROM: Clerk of the Court

RE: 05-3080
Minor, M. Jane v. Centocor Inc
02 C 3354, Richard Mills, Judge

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any.  A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

[ ] No record filed
[X] Original record on appeal consisting of:

| ENCLOSED: | | TO BE RETURNED AT LATER DATE: |
|---|---|---|
| [3] | Volumes of pleadings | [ ] |
| [ ] | Volumes of loose pleadings | [ ] |
| [ ] | Volumes of transcripts | [ ] |
| [ ] | Volumes of exhibits | [ ] |
| [ ] | Volumes of depositions | [ ] |
| [ ] | In Camera material | [ ] |
| [ ] | Other_____ | [ ] |
| | Record being retained for use in Appeal No. _____ | [ ] |

Copies of this notice sent to:    Counsel of record
[ ]    United States Marshal
[ ]    United States Probation Office

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice.  Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date: _____    _____
(1071-120397)                     Deputy Clerk, U.S. District Court

FILED
AUG 2 9 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS



# United States Court of Appeals
For the Seventh Circuit
Chicago, Illinois 60604

August 4, 2006

Before

**Hon.** JOEL M. FLAUM, Chief Judge

**Hon.** RICHARD A. POSNER, Circuit Judge

**Hon.** FRANK H. EASTERBROOK, Circuit Judge

| | |
|---|---|
| M. JANE MINOR,<br>    *Plaintiff-Appellant,*<br><br>**No.** 05-3080    v.<br><br>CENTOCOR, INC. and JOHNSON & JOHNSON, INC.,<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Central District of Illinois.<br><br>Nos. 02-3354 & 04-3114<br>Richard Mills, *Judge.* |

Order

The opinion of this court issued on August 4, 2006, is amended as follows:

Page 3, full paragraph, line 7, "25%" should be changed to "20%", so that the sentence reads: "That is functionally the same as a 20% reduction in Minor's hourly pay, a material change by any standard."

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

JUDGMENT - WITH ORAL ARGUMENT

CERTIFIED COPY

Date: August 4, 2006

BEFORE:      Honorable JOEL M. FLAUM, Chief Judge

             Honorable RICHARD A. POSNER, Circuit Judge

             Honorable FRANK H. EASTERBROOK, Circuit Judge

No. 05-3080

M. JANE MINOR,
         Plaintiff - Appellant
   v.

CENTOCOR, INCORPORATED and JOHNSON & JOHNSON,
         Defendants - Appellees


Appeal from the United States District Court for the
Central District of Illinois
Nos. 02-3354 & 04-3114, Richard Mills, Judge

    The judgment of the District Court is AFFIRMED, with costs,
in accordance with the decision of this court entered on this date.


(1061-110393)

A True Copy:
Teste:

Clerk of the United States
Court of Appeals for the

CERTIFIED COPY

In the

United States Court of Appeals

For the Seventh Circuit

No. 05-3080

M. JANE MINOR,

               *Plaintiff-Appellant*,

v.

CENTOCOR, INC., and
JOHNSON & JOHNSON, INC.,

               *Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
Nos. 02-3354 & 04-3114—**Richard Mills**, *Judge*.

ARGUED APRIL 7, 2006—DECIDED AUGUST 4, 2006

Before FLAUM, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. M. Jane Minor was a sales representative for Centocor, pitching to physicians and hospitals the products that Centocor and its affiliates offered to treat vascular conditions. After Antonio Siciliano became her supervisor, Minor contends, she was put in an impossible situation—Siciliano required her to visit all of her accounts twice a month, and her major accounts more frequently. That led her to work 70 to 90 hours a week (much of it driving time); until then 50 to 55 hours had been enough. In August 2001, after two months of this regimen, Minor began to experience atrial fibrillation

and depression. In October 2001 she stopped working. Both Centocor and the Social Security Administration have concluded that Minor is disabled (she receives benefits from both sources). She attributes her medical problems to Siciliano's demands. In this litigation Minor contends that those demands reflected both age and sex discrimination, violating the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. (Minor has sued not only Centocor but also its corporate parent, which is not a proper party. *Worth v. Tyer*, 276 F.3d 249, 259-60 (7th Cir. 2001). We treat Centocor as the only defendant.) Minor wants the court to award the difference between her disability benefits and what she could have made had she remained in the work force. (Her lawyer related at oral argument that she does not seek any other recovery.)

Nothing in the record so much as hints that Centocor in general, or Siciliano in particular, is biased against women or older workers, so Minor proposes to use the indirect method of proof pioneered by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The district court concluded, however, that Minor had not established a prima facie case under that method because Centocor did not take any "adverse employment action" against her. Minor was not fired or demoted; she is still Centocor's employee, welcome to resume work if her condition improves. The events of which she complains—not only the schedule for visiting accounts but also being bombarded by email messages from Siciliano and being subject to criticism and close supervision—are the ordinary incidents of employment rather than adverse actions, the judge concluded in granting summary judgment for Centocor.

Although hundreds if not thousands of decisions say that an "adverse employment action" is essential to the plain-

tiff's prima facie case, that term does not appear in any employment-discrimination statute or *McDonnell Douglas*, and the Supreme Court has never adopted it as a legal requirement. The statutory term is "discrimination," and a proxy such as "adverse employment action" often may help to express the idea—which the Supreme Court *has* embraced—that it is essential to distinguish between material differences and the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms or conditions. See, e.g., *Burlington Northern & Santa Fe Ry. v. White*, No. 05-259 (U.S. June 22, 2006), slip op. 13-14; *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80-82 (1998). See also *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 661-63 (7th Cir. 2005); *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 743-45 (7th Cir. 2002). Helpful though a judicial gloss such as "adverse employment action" may be, that phrase must not be confused with the statute itself or allowed to displace the Supreme Court's approach, which inquires whether the difference is material.

Extra work can be a material difference in the terms and conditions of employment. See *Tart v. Illinois Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004); *Greer v. St. Louis Regional Medical Center*, 258 F.3d 843, 845-46 (8th Cir. 2001). Minor contends that Siciliano required her to work at least 25% longer to earn the same income as before. That is functionally the same as a 25% reduction in Minor's hourly pay, a material change by any standard. And if Centocor requires women (or older workers) to work longer hours than men (or younger workers) to obtain the same remuneration, that material difference also is discriminatory and violates federal law. So Minor's suit may not be dismissed on the ground that her grievances are too niggling to come within Title VII and the ADA.

Still, the *McDonnell Douglas* approach requires the plaintiff to establish a difference in treatment compared with a member of the favored group (in this case, a man or a younger worker). Here Minor falls short. Siciliano required *all* sales representatives under his supervision to visit their customers every other week. Minor (with the support of an expert in pharmaceutical sales) says that this is too often, but that's not pertinent under federal law. Employers may run (or ruin) their businesses as they please, provided that they avoid discrimination on grounds forbidden by federal law. See *Forrester v. Rauland-Borg Corp.*, No. 05-4650 (7th Cir. June 29, 2006) (collecting authority); *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir. 1987). Siciliano's group included men and women, over and under age 40; all were subject to the same requirements.

Minor insists that a formally equal rule affected her disproportionately because her territory was larger. Her accounts were located in Springfield, Illinois (where she lived); St. Louis, Missouri; Peoria, Illinois; Des Moines and Iowa City, Iowa; Evansville, Indiana; and Owensboro, Kentucky. Driving time from Springfield to either Evansville or Owensboro is eight hours each way; the drive to Des Moines lasts between 5½ and 7 hours each way. St. Louis is a 2-hour drive from Springfield and Peoria 1½. Driving alone takes up a full work schedule; no time remains to call on hospitals and physicians. The problem was aggravated, Minor adds, by Centocor's refusal to pay for moving expenses so that she could relocate to St. Louis, from which travel times would have been shorter. (Centocor responds that where she lived was her affair, and that it does not reimburse sales representatives of either sex or any age for moving expenses.)

Other sales representatives may have had more compact territories, but nothing in the record suggests that

Centocor assigned her accounts because of her sex or age. Thus her line of argument hints at a disparate-impact theory. Yet *McDonnell Douglas* is a framework for assessing disparate-treatment claims, not disparate-impact claims. Minor does not have a good disparate-impact theory anyway, for she does not attempt to measure the effect of Siciliano's policy on all women (or all older workers); her only contention is that the policy injured *her*, particularly. That's not sufficient by any standard.

What is more, at least some of the problem appears to be of Minor's making. She chose to drive rather than travel by air—and she made round-trip journeys from Springfield rather than circle trips (Springfield to St. Louis to Iowa to Peoria to Evansville and Owensboro, then back to Springfield). Although she blames infrequent air service to Springfield for the decision to drive, she offers no explanation for preferring out-and-back forays over circle trips. The most efficient method may have been to meet accounts in Springfield, drive to St. Louis (where her major customers were located), and after doing the rounds there use a combination of air travel and rental cars to visit Des Moines, Iowa City, Peoria, Evansville, and Owensboro before returning by air to St. Louis and driving home to Springfield. Expenses of air travel and auto rental would have been fully reimbursed by Centocor.

How to construct the shortest route that visits all destinations is an old subject: in graph theory and linear programming it is known as the "traveling salesman problem" and is the subject of a considerable literature. Many of the important papers on the topic are collected at http://www.tsp.gatech.edu/history/biblio/tspbiblio.html. Our suggested routing may or may not be optimal—that depends in part on airline schedules—but is better than the automobile-only, hub-and-spoke system that Minor preferred. Counsel seemed to assume the Centocor had the burden to establish that a shorter tour was available, but

6          No. 05-3080

the plaintiff in employment-discrimination litigation bears the burden of establishing the prima facie case, see *Ballance v. Springfield*, 424 F.3d 614, 617 (7th Cir. 2005), which entails proof of unequal treatment; and on this record there is no foundation for a conclusion that Minor was treated unequally, even in the sense of suffering a one-person disparate impact.

Although Minor contends that Siciliano treated her differently by providing a routing schedule, while allowing other sales representatives to set their own, the record does not support that contention. It does show that Siciliano sent her a "sample routing", which Siciliano invited Minor to discuss, but it would not permit a reasonable jury to conclude that Siciliano *required* Minor to use that routing while giving other representatives free choice (recall that Minor devised and followed her own routing)—nor would it permit a jury to find that this "sample routing", if designed to be mandatory, was inefficient. Siciliano's proposal entailed air travel (except for an auto journey between Evansville and Owensboro) and completed the tour in time for Minor to spend every Friday in the office rather than on the road. She never tried this routing (to repeat, driving was her own preference) and has not offered any evidence to show that, had it been followed, her schedule would have been more onerous than that of younger or male employees.

Identification of a material difference in the terms and conditions of employment is an objective exercise. That a given employee perceives a burden is not enough, if that burden is attributable to the employee's own stubbornness or miscalculation. Nothing in this record suggests that Siciliano was trying to exploit a special vulnerability (as the employer may have been trying to do in *Washington*); he had no incentive to assign Minor an inefficient routing, for his own income depended on the team's sales. If he

No. 05-3080          7

wanted to replace Minor, there were much more direct ways to do so. Because the record would not permit a reasonable jury to conclude that Minor was treated worse than other sales representatives on account of age or sex, the judgment is

                        AFFIRMED.

A true Copy:

    Teste:

                *[signature]*
                Clerk of the United States Court of
                Appeals for the Seventh Circuit